Aug. 13,
1875. }                       HOLLIS v. DAVIS.

*Injuries from intoxication—Act of* 1870—*Liability of persons unlawfully furnishing spirituous liquors.*

Section 3 of chapter 3 of the Act of 1870, making a person unlawfully furnishing spirituous liquor responsible for injuries resulting therefrom, does not give a party upon whom a person becomes dependent in consequence of intoxication produced by liquor unlawfully furnished, and who was not

previously dependent on such party, an action against the person so unlawfully furnishing the liquor, for the damages resulting from such intoxication.

From Hillsborough Circuit Court.

Case. There was a demurrer to the declaration, and the questions arising thereon were transferred to this court by Rand, J.

The declaration was as follows : " In a plea of the case for that by chapter third of the Pamphlet Laws of this state, * passed June session of the legislature, A. D. 1870, being ' an act in amendment of chapter ninety-nine of the General Statutes, relating to the sale of spirituous liquors,' it is, among other things, enacted,—in case of the disability of any person in consequence of intoxication from the use of liquor unlawfully furnished, any party on whom such injured person may be dependent may recover, from the person unlawfully selling or furnishing any such liquor as aforesaid, all damage or loss sustained in consequence of such injury, to be recovered in an action on the case ; and whereas, on the 26th day of November, A. D. 1873, at Brookline, in said county, the said defendant, not being then and there an agent of said town of Brookline, appointed to sell liquors according to the provisions of chapter ninety-nine of the General Statutes of this state, being an act of the legislature of said state entitled ' sale of spirituous liquor,' did with force and arms, then and there, to wit, on the 26th day of November, 1873, at Brookline aforesaid, unlawfully and criminally sell or furnish a large quantity, to wit, two quarts, of spirituous liquor to one Peter Smithwick, of Hollis, in said county : and the plaintiffs aver, that on said day and year last aforesaid, at said Hollis, the said Peter Smithwick, in consequence of intoxication from the use of said liquor so unlawfully furnished or sold to him, the said Peter Smithwick, by said defendant, as aforesaid, he, the said Peter Smithwick, became and was disabled thereby, in this, to wit, the feet of said Peter Smithwick were frozen, and the said Peter, since said 26th November, 1873, has been and still continues to be unable to labor or do anything for his support and

---

* The third section of the statute is as follows :

" Sec. 3. Whenever any person in a state of intoxication shall commit any injury upon the person or property of any other individual, any person, who by himself, his clerk or servant, shall have unlawfully sold or furnished any part of the liquor causing such intoxication, shall be liable to the party injured for all damage occasioned by the injury so done, to be recovered in the same form of action as such intoxicated person would be liable to, and both such parties may be joined in the same action ; and in case of the death or disability of any person, either from the injury received as herein specified, or in consequence of intoxication from the use of liquor unlawfully furnished as aforesaid, any person who shall be in any manner dependent on such injured person for means of support, or any party on whom such injured person may be dependent, may recover, from the person unlawfully selling or furnishing any such liquor as aforesaid, all damage or loss sustained in consequence of such injury, to be recovered in an action on the case ; and any married woman may bring such action in her own name, and recover such damages to her own use."

maintenance, and thereby became confined to the house,—and said Peter is otherwise disabled: and the plaintiffs further aver, that the said Peter, on the 26th day of November, A. D. 1873, at said Hollis, became poor and unable to support himself, and hitherto continues to be poor and unable to support himself, and destitute of all property, and on said 26th day of November, A. D. 1873, at said Hollis, the said Peter Smithwick had not, nor has he at any time since, had relatives in the line of father or grandfather, mother or grandmother, children or grandchildren, of sufficient ability to maintain him, the said Peter Smithwick, while so standing in need of relief: and the plaintiffs further aver, that on the day and year last aforesaid, and hitherto, the said Peter Smithwick had and still continues to have his settlement in said town of Hollis, by reason of which the said Peter Smithwick, on said 26th day of November, A. D. 1873, at said Hollis, was and still continues to be dependent on said town of Hollis for his support and maintenance, by reason whereof it became, on said 26th day of November, A. D. 1873, and hitherto, the duty of the overseers of the poor of said town of Hollis to relieve and maintain him, the said Peter Smithwick,—and the said town of Hollis then and there were and still continue by law liable for the support and maintenance of said Peter Smithwick; and for the reasons aforesaid, the said town of Hollis have been at a great charge and expense in maintaining and supporting the said Peter, from the 26th day of November, A. D. 1873, hitherto, and have spent and laid out divers sums of money therefor, amounting to the sum of one hundred and thirty-three dollars and fifty-seven cents, according to the items annexed hereto, as follows :

| | |
|---|---:|
| Attendance of Dr. Willoby on Peter, | $90.00 |
| Board, nursing, &c., at $5.00 per week, | 38.57 |
| Providing board, physician, &c., by selectmen ; time, &c., | 5.00 |

And said Peter is for life rendered incapable of doing anything for his support, and thereby said town of Hollis are liable for the support and maintenance of said Peter during his life, all of which is to the damage of the said plaintiffs (as they say) the sum of one thousand dollars."

*A. W. Sawyer*, for the plaintiff.

This action is founded upon Pamphlet Laws, 1870, ch. 3, sec. 3. There are five things necessary to entitle any party to an action. (1) A disability. That disability is set forth in the declaration. (2) A disability in consequence of intoxication, &c. That is also set forth in the declaration. (3) A disability in consequence of intoxication from the use of liquor unlawfully furnished. Those matters are also so set forth. (4) A dependency. That is set forth in the declaration. Any party on whom such injured person may be dependent, may recover from the person unlawfully selling or furnishing any such liquor—liquor which disables in consequence of intoxication, and which was unlawfully furnished. Hollis is the party on whom Peter, the injured person, was

dependent; and that is set forth in the declaration. (5) Damages. Those have resulted to Hollis in consequence of the disability of Peter. He became poor, and unable to support himself. If the overseers of the poor of Hollis had wilfully neglected or refused to relieve and maintain Peter, they could have been indicted. The demurrer admits all the facts, which are well set forth. Where there is sufficient matter substantially alleged to entitle the plaintiff to his action, the declaration will be good on a general demurrer. *Dole* v. *Weeks*, 4 Mass. 451. This law of 1870 is an amendment of chapter 99 of the General Statutes, relating to the sale of spirituous liquors; and in construing chapter 3, section 3, 1870, the court ought to have reference to the general policy of the law of the state at the time this law—1870—was enacted. 39 N. H. 321, 195; 27 N. H. 129; 37 N. H. 305; 46 N. H. 124; 1 N. H. 107; 30 N. H. 170. The plaintiffs submit that this statute was intended to embrace within its objects and remedies just the case at bar. The plaintiffs have shown by the declaration that they are party,—as much so as the father of Peter might have been a party had he been alive and of sufficient ability to have maintained Peter, and living at said Hollis. This statute may be said to be additional to chapter 74, giving the right of action to a town which has been damaged, or has sustained loss in consequence of such injury, such town being obliged to furnish relief to the injured person. The plaintiffs contend cases may arise under this statute of 1870, when the father or grandfather, mother or grandmother, children or grandchildren, of sufficient ability, wife, or town, or city, may be the party on whom such injured person may be dependent, and hence the one to bring the action. The statute of 1870 uses the word party, which is broad enough, of itself, to include persons male or female, bodies corporate and politic, as well as individuals; and hence there is no necessity to call in aid the chapter on construction of statutes. The statute in spirit, and, as the plaintiffs contend, in terms, supports the position taken, that the town or city on whom such injured person may be dependent may recover, &c. Until the plaintiffs hear from the defendant, the plaintiffs rest their brief upon the statute itself as embracing just such a case as this.

*G. Y. Sawyer & Sawyer, Jr.*, and *P. Dodge*, for the defendant.

I. If the provision of the act of July 2, 1870, upon which this action is founded, can be held valid under our constitution, in any case, it nevertheless does not include the case of municipal corporations like the plaintiff town, where the only injury complained of is the burden of a pauper's support. It is true, the act might be construed to include such corporation, if sound policy required it. We contend that sound policy forbids it.

It is clear that the general policy of the law in this state, in relation to the relief of the poor, is, that the burden shall be made to fall on town or county municipalities where the burden of their support may be sustained, without the risk of reducing others to pauperism. It is

on this ground—that of sound public policy—that the courts of this state, ever since the early cases in the 4th New Hampshire Reports— *Hillsborough* v. *Deering*, 94, and *Dover* v. *McMurphy*, 158—have refused to give to the statute, making parent and child liable for the support of the other when in need of relief, the construction which its terms would seem to require, or, at least, would clearly admit that the parent or child sought to be charged should be held liable for the support when he has the means to supply it for the time being. The language of that statute is, in substance, that " the relations * * in the line of father, &c., children, &c., of sufficient ability, shall be liable, &c. " There is nothing in its terms to forbid the construction that the father, &c., should be liable for the support, if he had means to pay for it, at the time the support was needed. Indeed, such is the meaning of the language used, as it would be commonly understood; and it is only upon the ground that sound public policy forbids that it should be so interpreted as to subject others to the risk of pauperism, that it is construed by the courts as limiting the liability to such as have the ability to bear the burden without that risk.

Now the construction of the act in question, in this case, which the plaintiffs must claim in order to maintain the action, is in direct contradiction of the recognized policy of the law on the subject of the support of paupers. The theory of the plaintiffs' case, as set forth in the declaration, is, that Smithwick was disabled in consequence of intoxication, and thereby made a pauper for the plaintiff town to support, and that the legislative intent of the act is to give the town a remedy for the injury which it has sustained in thus making him a pauper. That injury, as claimed in the declaration, is the support of a pauper permanently crippled, involving the expense of his maintenance for life, and when that expense borne by the defendant may reduce him and all his family to the condition of paupers. In other words, the construction claimed to sustain the action is, that the legislative intent of the act is to relieve the town from the public duty of supporting the person thus made a pauper, and throw the burden upon an individual, though thereby he and all dependent upon him should be converted into public paupers.

Towns, in the support and maintenance of paupers, are a part of the governmental machinery for administering public affairs. It is one of the duties of government to make provision by law for the support of the needy poor. The town, in providing and administering this support, is performing a public function, as a part of the government administering its public affairs. The act was not intended to affect towns in their public relations to paupers, or to change in any way their duties or rights in reference to such public business. It was intended to apply only to private transactions, and to regulate and establish the relations between different persons in their private capacity in respect to injuries resulting from intoxication caused by liquor unlawfully sold. There is nothing in the terms of the act requiring a wider application. Full force and effect are given to all its provisions by limiting its

application to such private transactions, and by holding that it was not intended to include a disability in consequence of intoxication, by which the party disabled was made a pauper, as an injury for which the town is to have a remedy.

There are five different cases specified in the third section of the act for which a remedy by action is there given, and all of them involving such private and personal relations as that of parent and child, husband and wife, and an injury to either with a remedy to the other, or, without involving such relation, founded on an injury to person or property with a remedy to the party injured. They are,—(1) The case of injury, by one intoxicated, to the person or property of another, with a remedy to such other ; (2) the case of the death or disability of the person injured from such injury, with a remedy to any person dependent on him for means of support ; (3) the case of death or disability in consequence of intoxication, with a remedy to such person dependent on him ; (4) the case of death or disability from the injury received, with a remedy to any party on whom the injured person may be dependent ; and (5) the case of death or disability in consequence of intoxication, with a remedy to any party on whom the injured person may be dependent.

In the first case, the injury is direct to the person to whom the remedy is given. In each of the other four the direct injury is to one, and the remedy to another, on account of the relation of dependence between them ; two of the cases being of injury to the parent, husband, or child, supporting his relation or dependant, with a remedy to the dependant for the loss of such support ; and two, of injury to the dependant, with a remedy to the parent, husband, or child, for damage caused thereby. A sixth case, not embraced in the act, could easily have been provided for by adding after the words " any party on whom such injured person may be dependent," in the third section, the words " or may become dependent by reason of such injury." Such amendment would have provided for the case of an emancipated son not dependent on his father, of sufficient ability for the means of support, because supporting himself by his own labor, but made dependent on him by reason of the injury. But even with such amendment, we respectfully submit that the act could not be construed to embrace the plaintiffs' case, without an express declaration of such intention upon the ground above presented ; that considerations of public policy would forbid such construction without such declaration. It needed only this amendment, expressly made applicable to towns, to render the act perfect as a specimen of legislative fanaticism. Is it expected by the plaintiffs that the act is to be extended by judicial construction to the case of an injury to a town, by making one a pauper for it to support, when the remedy given is to subject to a liability that may make a whole family paupers ?

II. 1 Bishop on Crim. Law, sec. 329, says,—" The law deems it the duty of all good citizens to prosecute crimes, especially of an aggravated nature," and that he who prosecutes his civil suit against a criminal " must come into court with clean hands," or, in the words of Lord

Kenyon, " must show that he stands on a fair ground when he calls on the court to administer relief to him;" and he adds,—" Therefore, one who has suffered from a felony cannot maintain against the felon a civil action until he has first discharged his duty to the public in carrying on, or, at least, setting on foot a criminal prosecution," and that without this he would not stand in court, on a fair ground, with clean hands. In section 366 he states the reason of this rule of law to be, that this stimulant to induce men to bring felons to justice is required by the policy of the law. This is recognized as the reason of the rule by RICHARDSON, C. J., in *Bank* v. *Flanders*, 4 N. H. 239; and though the same learned judge, in the case of *Pettengill* v. *Rideout*, 6 N. H. 454, says he is not satisfied that the rule is of any practical use in any country, yet, it is to be remembered, the legislative policy of this state, as to the heinousness of rumselling, was not in his day what it now is. Had it been, would that learned judge have failed to see that, upon the theory of the wisdom and beneficence of such legislation entitling its provisions to a liberal construction, it was the duty of the court to apply the stimulant of the rule of law as one required by legislative policy? This common law rule applies to the case of felonies, but only for the reason of the aggravated nature of those crimes. When the legislature exalt a misdemeanor into such a grade of heinousness, as the " sum of all felonies "—that extraordinary provisions, like those of this act, are deemed necessary for its suppression —the reason of the rule and the policy of the law alike require that it be applied to such cases. We respectfully submit that this action cannot be maintained by the town, for an injury arising from the alleged offence, without an amendment to the declaration that the public duty has been performed of a prosecution set on foot for the punishment of the offender, and his conviction of the offence.

*A. W. Sawyer*, in reply.

I. The question whether the damages, recoverable in any given case under this law, will make a pauper of the rumseller and his family, cannot be taken into consideration in giving construction to this statute: such consequences are open to the rumseller before he transgresses the law; —so, also, is the question open to the legislature, while considering the passage of such a law, whether the indiscriminate sale of liquor has not made and will not make paupers.

II. The suggestion that the town of Hollis or their selectmen cannot be permitted to proceed with their remedy for the civil injury until they have performed their public duty, has no force against the fact that this rum was furnished in Brookline, and is so alleged in the declaration: the public duty of the selectmen of Hollis does not extend beyond the limits of Hollis. What public duty can be referred to for Hollis to do in Brookline is not quite apparent. The selectmen of Hollis have always performed their public duty, under this law, as against rumsellers and other violators of the law in Hollis: Hollis selectmen have no jurisdiction over Brookline rumsellers.

It is admitted that this act gives unlimited damages in the fourth case cited by the defendant in his brief. That is the case of death or disability from the injury received, with a remedy to any party on whom the injured person may be dependent; and it may be suggested that the fact of recovering damages to such an extent as to reduce the defendant in such a case to pauperism may be a good cause for amending or repealing the act; but, it is submitted, it cannot be a defence to the action. Now, if damages are given to these plaintiffs under the defendant's fifth case, as the plaintiffs submit they are, and as the defendant also admits in his first clause, were it not for sound policy, is it any defence to a recovery that the damages may be to such an extent as to make a pauper of the defendant and his family?

The admission of the defendant would allow Hollis to bring an action, under the fifth case cited, if sound policy required it. Take the first case named by the defendant under this act. Suppose A had obtained liquor of this defendant, sold or furnished unlawfully, and A, while intoxicated, had broken the legs of one of the oxen belonging to the plaintiff town: the plaintiffs contend, because they are a town and own the oxen, that that does not deprive them of having an action under this law;—the town may be trustee of personal property, or bailee of personal property, and an action accrue to the plaintiff town under this act.

It may be further suggested and urged, that no son in New Hampshire can be more dependent on his father for support than Peter is dependent on Hollis for support. That dependency commenced when he got intoxicated with the defendant's rum. Peter then became disabled. The damages resulting on account of that disability, this act, upon a fair and impartial construction, and, as the plaintiffs contend, in terms, gives the party upon whom Peter is dependent, whether father or grandfather, mother or grandmother, children or grandchildren, of sufficient ability, or town, or city, a right of action.

SMITH, J.  The learned counsel for the defendant admits, in his argument, that the act of 1870, upon which this action is founded, might be construed to include a municipal corporation, if sound policy required it. It is claimed that the general policy of the law, in this state, in relation to the relief of the poor, is, that the burden shall be made to fall on town and county municipalities, where the burden of their support may be sustained without the risk of reducing others to pauperism; and that the courts in this state, ever since the early cases of *Hillsborough* v. *Deering*, 4 N. H. 94, and *Dover* v. *McMurphy*, *ib.* 158, have refused to give to the statute, making parent and child liable for the support of the other when in need of relief, the construction which its terms would seem to require, or, at least, would admit, to wit, that the parent or child sought to be charged should be held liable for the support, when he has the means to supply it, for the time being. It is further claimed, that the construction of the act in question, contended for by the plaintiff in order to maintain this action, is in direct contra-

vention of the recognized policy of the law on the subject of the support of paupers.

The provisions of the statute referred to are as follows: " The relations of any poor person, in the line of father or grandfather, mother or grandmother, children or grandchildren, of *sufficient ability*, shall be liable to maintain such person when standing in need of relief. If such person has no such relations of sufficient ability, the town wherein such person has a legal settlement shall be liable for his support." Gen. Stats., ch. 74, sec. 8. In giving construction to this statute, the court, in *Colebrook* v. *Stewarstown*, 30 N. H. 114, laid down the rule as follows: " The question is to be decided with reference to the existing state of things. * * If the relative, in the present state of his family and means, and in the present state of destitution of his relatives and their ability to support themselves, cannot afford the assistance their situation calls for without reducing his property below the amount required, with his labor, to afford a comfortable support to his family, and thus hazarding their comfortable support in future, he is not to be deemed a person of sufficient ability, within the meaning of the statute." To the same effect are *Hillsborough* v. *Deering* and *Dover* v. *McMurphy*, *supra*.

It will be noticed, that the statute, in relation to the support of paupers, imposes that burden on relations " of sufficient ability " only. It will also be noticed, that, in the act of 1870, upon which this suit is founded, the qualification, that the person sought to be charged must be of sufficient ability, is omitted. The omission of these words affords strong grounds for the inference that the qualification of sufficient ability was not intended to apply. The statute, unquestionably, was intended to be in aid of the general statute prohibiting the sale of spirituous liquors. Such is its title; and its provisions are such that, when enforced, they must materially aid in the enforcement of the provisions of ch. 99 of the General Statutes. It would seem that the legislature intended to say to those who might seek to violate its provisions, in effect, something like this: " The indiscriminate use of intoxicating liquors is the prolific source of much of the poverty, suffering, and crime of the state. Its sale, except for certain limited and proper purposes, is therefore forbidden. If any one shall, notwithstanding its sale is prohibited, wilfully violate the provisions of the law in that regard, he shall, upon conviction, suffer fine or imprisonment. But, inasmuch as experience has shown that the law is often violated, and the detection and conviction of the guilty not always certain, we will, therefore, throw around the citizens of this state an additional protection, by subjecting every one who shall dare to violate this law to the liability of making good whatever damages may happen in consequence of the intoxication of any person from the use of liquor so unlawfully furnished, although the consequence may be that the person subjected to such damages may be thereby reduced to poverty, and himself and his family thereby made liable to become a public charge for their support." The apprehension of such a result might, in the minds

of the legislature, be considered an additional restraint upon persons who would otherwise not hesitate to disobey the law in this respect. If the legislature had not intended to include persons liable to towns for injury to paupers, in consequence of intoxication from liquors unlawfully furnished, it would have guarded against such a construction of the statute by inserting language excluding such liability, except in persons of sufficient ability.

The term " party " used in the statute is also broad enough to include a municipal corporation. The act provides that " any *person* who shall be in any manner dependent on such injured person " may recover. " Person " is here the proper word to be employed, for none but persons could be dependent on another person. A municipal corporation is not dependent on a person " for means of support," nor in any other sense. The act next provides that " any party on whom such injured person may be dependent " may recover. If instead of " party " the word " person " had been used, it could doubtless be extended and applied to bodies corporate and politic, as well as to individuals—Gen. Stats., ch. 1, sec. 9 ; but from the fact that the legislature used the word " person " where only individuals and not corporations could be dependent, and used the word " party " where an injured person might be dependent on a municipal corporation as well as on an individual, there is strong reason for holding that, by the term " party," the legislature intended to include municipal corporations as well as individuals.

Before dismissing this view of the case, it is hardly necessary to add, that if the question of liability depends upon the ability of the person sought to be charged, it would be a fact to be settled by the jury upon the trial.

The defendant admits that there are five different cases specified in the third section of the act, for which a remedy by action is there given, and all of them involving such private and personal relations as that of parent and child, husband and wife, and an injury to either with a remedy to the other, or without involving such relation, founded on an injury to person or property, with a remedy to the party injured. It is also admitted, that if, after the words " any party on whom such injured person may be dependent," in the third section, the words "or may become dependent by reason of such injury " had been added, a sixth case not embraced in the act would have been provided for, so as to include the case of an emancipated son not dependent on his father of sufficient ability for the means of support, because supporting himself by his own labor, but made dependent on him by reason of the injury : although in case of such amendment the defendant contends that the act could not be construed to embrace the plaintiffs' case without an express declaration of such intention, upon the ground above presented ; that considerations of public policy would forbid such construction without such declaration.

The first part of section 3 relates solely to the case of injury by one intoxicated to the person or property of another, with a remedy to

such other. As to the construction to be given to so much of the act, no question is raised, and none was raised, except as to the form of the action, in *Bodge* v. *Hughes*, 53 N. H. 614. The remainder of the section undoubtedly includes the second, third, fourth, and fifth cases mentioned in the defendant's brief. But it is claimed that the act does not include the case of a person who is not dependent at the time of the injury: that in order to include a person who becomes dependent in consequence of such injury, the words " or may become dependent by reason of such injury," or words of like import, should be inserted, so that the section would read, " any person who shall be in any manner dependent, or may become dependent by reason of such injury, on such injured person for means of support, or any party on whom such injured person may be dependent, or may become dependent by reason of such injury, may recover from the person unlawfully selling," &c. And I think the defendant is right in the construction he contends for. If the legislature intended to make a person who furnishes intoxicating liquor, in such a case, liable for damages caused by a person intoxicated from such liquor, or for damages happening to him ; if the relation of dependency did not exist at the time the injury was caused or happened, but was created by reason of such injury, it has failed to say so. The reason may be equally good for making such legislation apply in the latter as in the former case ; but the question is not whether it ought so to apply, but has the legislature so enacted ? The language used,—" any person who *shall be* in any manner dependent," or, "any party on whom such injured person *may be* dependent,"— cannot be construed to mean any person who *shall become* or *may become* dependent by reason of such intoxication. The words, according to their common and approved usage, refer to the time of the injury, and not to a time subsequent, and must be so construed. Gen. Stats., ch. 1, sec. 2. The intention is to be gathered from the language used, and cannot be extended by judicial construction to a case not embraced within the fair construction of the act. If it had been the legislative intent to extend the act to cases of dependencies happening after the injury, and caused thereby, the framers of the act would hardly have failed to express themselves in language that could not be misunderstood.

As the case stated in the declaration does not come within the terms of the act, the demurrer must be sustained.

CUSHING, C. J. The position is taken, in the very able and ingenious argument for the defendant, that the term " party " which is used in the statute does not necessarily include municipal corporations, and that it is against the policy of our law so to construe this statute as to make it embrace such corporations. I believe the use of the word *party*, in the sense of one of two opposing litigants, is too well established to be now questioned. It is so defined in Johnson's folio dictionary. It would be as easy and as natural so to construe the word as to make it mean corporations to the exclusion of individuals, as the contrary. I cannot therefore accede to this view of the case.

The position is also taken, that the offence of unlawfully selling spirituous liquor is considered by our law so heinous, that it ought to be considered so far a felony that no private action ought to be sustained until the offender has first been indicted and convicted. But I believe the rule requiring a prosecution and conviction of the offender before allowing a civil action has never been held in this state, and, as the offence is not by statute declared to be a felony, the offender cannot be entitled to this immunity.

The statute under which this action is brought provides, substantially, that when any person intoxicated by liquor unlawfully sold to him shall do any injury to the person or property of others, the person so injured shall be entitled to a remedy by action to recover his damages of the person so selling the liquor. The statute then proceeds in these words : " and in case of the death or disability of any person, either from the injury received as herein specified, or in consequence of intoxication from the use of liquor unlawfully furnished as aforesaid, any person who shall be in any manner dependent on such injured person for means of support, or any party on whom such injured person may be dependent, may recover."

The part of the statute preceding the words above quoted relates wholly to the remedy for a person injured by another in a state of intoxication. The portion of the statute quoted above refers entirely in its terms to such injured person, and does not refer to the person intoxicated. In order to make the statute embrace the case declared on, it would be necessary to insert after the words " such injured person," the words *or such intoxicated person,* so that it should read, *any person who shall be in any manner dependent on such injured person, or such intoxicated person, &c.* I do not think that the court would be justified in interpolating into this statute, so highly penal in its character, such important words, by reason of any intention of the legislature which might be supposed to be inferable from the rest of the statute. If the legislature intended this, it has not said it. I do not think that, by any fair construction of the terms of this statute, it can be made in this particular to embrace the case alleged in the declaration.

In the defendant's argument the position is taken, that by the terms " may be dependent," in the statute, is intended *persons who at the time of the injury are actually dependent on the plaintiff, or on whom the plaintiff was actually dependent,* and that these terms do not embrace the cases in which the party injured, or the party intoxicated, were dependent on themselves, and became dependent on the plaintiffs by reason of the injury or intoxication. For instance : it might be that in this case Smithwick, at the time of the injury, was capable of supporting himself, and so was not dependent on the town ; or he might, at the time of the injury, have had a son, able, and obliged, within the terms of our statute, to support him, and so not dependent on the town, and this support might afterwards be taken from him. In order to make the statute embrace this case, it would be necessary to insert after the words " may be dependent," the further words *may afterwards be*

*dependent,*—an enlargement of the meaning of the statute which I do not think the court ought to make. For these reasons I think the demurrer must be allowed.

LADD, J. The statute, in very general terms, imposes upon towns the duty of relieving and maintaining all persons within their limits, who may be poor and unable to support themselves. Gen. Stats., ch. 74, sec. 1. The obligation thus created implies a correlative right, in favor of all persons, to be relieved and maintained in case they become unable to support themselves. This right exists in favor of the rich as well as the poor; and it makes no difference, so far as regards the obligation upon the town, whether a person be reduced to necessity by his own misconduct or fault, or by the wrongful or careless act of another, or by pure accident or misfortune. The obligation is imposed by a humane municipal law, as public and general in its character as the law which imposes the duty of raising a certain amount of money for the support of schools; and the corresponding right of support is of a nature hardly to be distinguished from the great mass of rights conferred by other public laws upon the inhabitants of the state: it is simply one of the benefits of good government and humane laws. The question is, whether this right of support at the public expense, thus secured to all by law, can be said to establish a relation of dependence between the citizen and the state, so as to bring the matter fairly within the meaning of ch. 3, sec. 3, Laws of 1870. The allegation is, that Smithwick became poor, and unable to support himself, on the very day the liquor was illegally furnished to him by the defendant; and it does not appear that he had received aid from the town before his disability, caused as there shown. In order, therefore, to hold the declaration sufficient, it must be held that the pauper law makes every one, rich as well as poor, dependent for support upon the town in which they live, within the meaning of the act of 1870. I am clearly of opinion that this cannot be so, and that, upon this ground, the demurrer must be sustained.

This is as far as we need go in the present case. It seems to me, however, that it admits of much doubt whether a legislative intent to include towns within the remedies of the act of 1870, with respect to their liability for the support of paupers, is to be found in the act.

In some sense, perhaps, all are dependent on public charity for support. Riches may take to themselves wings and fly away; misfortune and poverty may overtake those who have least reason to apprehend the calamities that await them: but the expense of furnishing support to one man, who has been thus reduced to want, may be no greater than the expense incurred in protecting the property of another against the violence of a mob. Indeed, the benefit is only a little more immediate and direct than the great mass of benefits secured to all by the due administration of general laws for the protection of life, liberty, and property. Whether a correct interpretation of the statute under consideration shows any other ground upon which the demurrer should be sustained, we need not now inquire.  *Demurrer sustained.*