705 F.2d 959
 Lee Roy COLLINS, individually and on behalf of all other
persons similarly situated, Appellants/Cross Appellees,
v.
Mary Jo HOKE, individually and in her official capacity as
General Relief Director of Cedar County, Iowa; Howard
Davis, Norman Kroemer, Jean Penningroth, Robert Suchomel and
Leroy Wiese, individually and in his or her official
capacity as a member of the Board of Supervisors of Cedar
County, Iowa, Appellees/Cross Appellants.
 Nos. 82-1396, 82-1405.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 8, 1982.
Decided Feb. 15, 1983.
Rehearing and Rehearing En Banc Denied March 29, 1983.
 
 Christine Luzzie, Lois Cox, Legal Services Corp. of Iowa, Iowa City Regional Office, Iowa City, Iowa, for appellants/cross appellees.
 Lee H. Gaudineer, Carlton G. Salmons, Austin & Gaudineer, Des Moines, Iowa, for appellees/cross appellants.
 Before HEANEY, ROSS and FAGG, Circuit Judges.
 ROSS, Circuit Judge.
 
 
 1
 This action is before this court on appeal by Lee Roy Collins and on cross-appeal by Mary Jo Hoke from the district court's[1] orders dated September 11, 1981, and January 14, 1982. We affirm the judgment of the district court.
 
 Facts
 
 2
 Lee Roy Collins is a 52 year old widower who lives alone in a rented farmhouse in rural Cedar County, Iowa. He is unemployed and unemployable due to physical disabilities. At all times relevant, he was awaiting final determination on his application for Federal Supplemental Security Income and Social Security Disability Benefits.[2]
 
 
 3
 Collins received about $350.00 from Cedar County in general relief assistance in September and October of 1980. In December, Collins' subsequent request for assistance was denied and he was offered residence in the Cedar County Care Facility. On December 22, 1980, Collins filed his original complaint in federal district court challenging the County's authority to provide for support by placement in the care facility. Upon Collins' motion for preliminary injunction, the district court ordered the County to provide Collins with monetary assistance until February 6, 1981.
 
 
 4
 Cedar County adopted a county ordinance on February 4, 1981, establishing regulations governing provision of general relief assistance. Relevant portions of the ordinance provided: (1) a limitation of the amount of monetary assistance to $1,000.00 per year; and (2) express authorization to the County to offer placement in the care facility whenever assistance might extend beyond 60 days. On February 5, 1981, in reliance on the new ordinance, the County General Relief Director denied Collins' request for monetary assistance of $260.00. The Director instead offered him residence in the care facility because any additional monetary assistance would exceed the $1,000.00 per year ceiling. Collins refused the offer.
 
 
 5
 On February 9, 1981, Collins appeared before the Cedar County Board of Supervisors to present his appeal of the Director's decision. Collins was represented at the hearing by a paralegal from the Legal Services Corporation of Iowa. The Board refused to allow Collins to be represented by a nonattorney during the appeal hearing. The Board affirmed the Director's denial of monetary relief and offer of residence in the care facility. Collins filed a supplemental complaint in federal district court under 42 U.S.C. Sec. 1983. Jurisdiction is also based on 28 U.S.C. Secs. 1331 and 1343(3) and (4).
 
 
 6
 On September 11, 1981, the district court ruled that the County's offer of facility placement violated Iowa Code Sec. 252.27 (1981), that the $1,000.00 annual ceiling on benefits violated the County's statutory duty to assist the poor, and that Collins was constitutionally entitled to nonattorney representation before the Board. In its order of January 14, 1982, upon reconsideration of its earlier rulings, the district court held that a state statute effective July 1, 1981, expressly granted authority to the County to offer placement in the care facility and validated the $1,000.00 ceiling. The court then addressed Collins' constitutional arguments and found that the County's actions and the ordinance satisfied constitutional requirements.
 
 
 7
 Collins appeals challenging the constitutionality of the county ordinance authorizing placement in a care facility and the constitutionality of the $1,000.00 ceiling on general relief. On cross-appeal, the County raises the following issues: (1) the County's authority prior to July 1, 1981, to offer residence in the care facility; (2) Collins' right to nonattorney representation before the Board; and (3) the district court's award of attorney fees.
 
 
 8
 A. Constitutionality of Facility Placement and $1000 Ceiling
 
 
 9
 Collins contends that the County's offer of residence in the care facility amounts to an involuntary commitment which violates his protected liberty interest and his right to due process. He argues that he lacks any real capacity to reject the offer because of his lack of alternative sources of support. Collins argues that his right to personal liberty protected by the fourteenth amendment is infringed by the restrictions to which he would be subjected at the care facility.[3]
 
 
 10
 Collins cites a line of cases in which the United States Supreme Court has found liberty interests in: a teacher's choice to teach a foreign language, Meyer v. Nebraska, 262 U.S. 390, 400, 43 S.Ct. 625, 627, 67 L.Ed. 1042 (1923); parents' choice to send children to private schools, Pierce v. Society of Sisters, 268 U.S. 510, 534, 45 S.Ct. 571, 573, 69 L.Ed. 1070 (1925); a married person's right to obtain contraceptives, Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); and a woman's right to choose to have an abortion, Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973). The right to live at home and not be forced into the county facility, Collins asserts, is a fundamental right secured by the Constitution.
 
 
 11
 Collins contends that where "certain 'fundamental rights' are involved, the Court has held that regulation limiting these rights may be justified only by a 'compelling state interest,' and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." Roe v. Wade, supra, 410 U.S. at 155, 93 S.Ct. at 727 (citations omitted). Collins also argues the county ordinance serves no legitimate governmental interest.
 
 
 12
 The County maintains that its offer of placement in the facility was not an involuntary commitment. The liberty interest protected by the fourteenth amendment does not include the right to state-support of a chosen lifestyle. For this proposition, the County relies on Harris v. McRae, 448 U.S. 297, 316-18, 100 S.Ct. 2671, 2687-2688, 65 L.Ed.2d 784 (1980) in which the Supreme Court held that although a woman's right to choose to have an abortion is a protected liberty interest, the government is under no obligation to finance a woman's exercise of that right. Thus, the County reasons that even if Collins has a liberty interest in his chosen lifestyle he is not entitled to government funds to support that lifestyle. We agree.
 
 
 13
 The Supreme Court in Harris v. McRae, supra, 448 U.S. at 316, 100 S.Ct. at 2687 held that
 
 
 14
 although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation. Indigency falls in the latter category. The financial constraints that restrict an indigent woman's ability to enjoy the full range of constitutionally protected freedom of choice are the product not of governmental restrictions on access to abortions, but rather of her indigency.
 
 
 15
 As in Harris v. McRae, the government here does not seek to interfere with Collins' exercise of his freedom to choose to live alone. Instead, his indigency has removed that option. The government seeks only to discharge its statutory duty to provide for Collins' needs. We find that the county ordinance authorizing the County to offer residence in the care facility does not impinge a fundamental liberty interest. The Court in Harris v. McRae, supra, 448 U.S. at 317-18, 100 S.Ct. at 2688-89 stated:
 
 
 16
 Although the liberty protected by the Due Process Clause affords protection against unwarranted government interference with freedom of choice in the context of certain personal decisions, it does not confer an entitlement to such funds as may be necessary to realize all the advantages of that freedom.
 
 
 17
 The Court further stated that the liberty interest protected in Griswold v. Connecticut, supra, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 and Pierce v. Society of Sisters, supra, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 did not impose on the government an affirmative duty to finance those rights.
 
 
 18
 We affirm the district court's holding that the County has "not violated plaintiff's constitutional right to liberty by refusing to subsidize his preferred living arrangements, even though such a violation might have occurred had they taken affirmative steps to interfere with his liberty by forcing him to reside in the County Care Facility." The county ordinance authorizing the County to offer placement in the care facility does not violate constitutional principles.
 
 
 19
 Collins further claims that section 6(8) of the county ordinance[4] which limits the amount of benefits to which he is entitled to $1,000.00 per year, is constitutionally deficient and contrary to state law. The district court held that the $1,000.00 ceiling was not an absolute limitation of benefits because the ordinance provides that a person requiring additional assistance is offered placement in the care facility.
 
 
 20
 The Board is clearly within statutory authority in setting the $1,000.00 ceiling. Iowa Code Sec. 252.27 (1982) states in part that "[t]he amount of assistance issued shall be determined by standards of assistance established by the board of supervisors." Section 6(8) does not violate state law; nor is it offensive to the Constitution. For the reasons set forth above we affirm the district court's ruling that the $1,000.00 ceiling is constitutionally inoffensive.
 
 B. County's Authority Prior to July 1, 1981
 
 21
 On July 1, 1981, a new state statute governing general relief became effective which provided great autonomy to counties in administering their relief programs. Iowa Code Chpt. 252 (1982). Significantly, complete power was granted to the board of supervisors to determine the form of the relief. Iowa Code Sec. 252.27 (1982). In its order of January 14, 1982, the district court ruled that the County lacked the authority to offer Collins residence in the care facility prior to the enactment of the state statute on July 1, 1981. The County challenges the court's ruling.
 
 
 22
 In Collins' original and supplemental complaints, he requested only injunctive and declaratory relief. The district court, upon finding that prior to July 1, 1981, the County was without authority to offer placement in the care facility, did not award monetary damages. After the new statute was passed, and the County obtained authority to offer residence in the care facility, the issue of the propriety of the district court's ruling on the County's authority prior to July 1, 1981, became moot.
 
 
 23
 Although the parties did not raise the issue of mootness, it is "incumbent upon the court, on its own, to address any questions that arise concerning mootness before proceeding to the merits of the case." Bishop v. Committee on Professional Ethics, Etc., 686 F.2d 1278, 1284 (8th Cir.1982) (citation omitted). In light of the new statute effective July 1, 1981, and the fact that only declaratory relief was requested, we find the issue of the County's authority prior to July 1, 1981, to be moot and we decline to address the issue.
 
 C. Nonattorney Representation
 
 24
 The application procedure for general relief requires an applicant to first apply to the General Relief Director, who has authority to grant or deny relief. If relief is denied, the applicant may appeal for a de novo hearing by the Board of Supervisors. At the hearing, the applicant is entitled to present documentary and testimonial evidence, cross-examine adverse witnesses and be represented by an attorney. The Board refused to allow Collins to be represented at his hearing by a nonattorney paralegal from the Legal Services Corporation of Iowa.[5] Collins asserts that the refusal to allow nonattorney representation violates his due process rights.
 
 
 25
 In addressing the requirements of procedural due process in social welfare cases, the Supreme Court has held that a "fundamental requisite of due process of law is the opportunity to be heard," and "[t]he right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel." Goldberg v. Kelly, 397 U.S. 254, 267 and 270, 90 S.Ct. 1011, 1020 and 1021, 25 L.Ed.2d 287 (1970). Representation by counsel was meant to enhance an applicant's right to be heard; not to be a bar to that right. The right to be heard "must be tailored to the capacities and circumstances of those who are to be heard." Id. at 268-69, 90 S.Ct. at 1020-21 (footnote omitted).
 
 
 26
 The Supreme Court has continually held in the context of social welfare that due process is a flexible concept which requires procedural protections suited to the particular situation. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). The Court in Eldridge enunciated three factors for consideration in determining what procedures due process requires in a given situation:
 
 
 27
 First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
 
 
 28
 Id. at 335, 96 S.Ct. at 903 (citation omitted).
 
 
 29
 An analysis of these three factors, convinces this court that Collins is entitled to nonattorney representation if he so chooses.[6] First, Collins' interest which will be affected by the Board's decision is great. He has no income or assets and at the time of the hearing was receiving no assistance from other sources. Second, Collins is illiterate. Without assistance by one more articulate and better educated than he, Collins is in danger of being unjustly deprived of benefits. The value of representation is obvious. Finally, this court can conceive of no governmental interest which supports a requirement of representation by a licensed attorney. No fiscal and administrative burdens would result in allowing nonattorney representation. Thus, we affirm the district court's holding that due process requires the Board to allow nonattorney representation at the appeal hearing.[7]
 
 D. Attorney Fees
 
 30
 The County challenges the district court's award of attorney fees to Collins on three grounds: (1) Collins was not a prevailing party entitled to an award of attorney fees; (2) the award should have been apportioned to reflect the number of issues on which Collins did not prevail; and (3) the award should have been reduced because the attorney's salary is publicly funded through legal aid.
 
 
 31
 The County argues the award should have been reduced on the grounds that plaintiff's attorney was employed by the Legal Services Corporation of Iowa. Legal Services is a publicly funded nonprofit corporation. This court has previously held that "it is inappropriate to consider that the prevailing plaintiff's attorney was working for a legal aid organization." Oldham v. Ehrlich, 617 F.2d 163, 168 (8th Cir.1980). The district court properly refused to reduce the award on this basis.
 
 
 32
 The district court awarded attorney fees in the amount of $16,534.50 under 42 U.S.C. Sec. 1988. The County argues the district court erred in determining that Collins was a prevailing party and in failing to prorate the attorney fees to reflect the number of issues on which Collins did not prevail. The Supreme Court in Eckerhart v. Hensley, 664 F.2d 294 (8th Cir.1981) (unpublished per curiam), cert. granted, 455 U.S. 988, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982) agreed to address these precise questions. In view of the apparent relevance of the Hensley case to the attorney fee issue, we remand the question to the district court for further consideration in light of the Supreme Court's upcoming disposition of Eckerhart v. Hensley.
 
 
 33
 HEANEY, Circuit Judge, dissenting.
 
 
 34
 I respectfully dissent. In my view, the county does not have the right to require Lee Roy Collins to move to the county poor farm as a condition of receiving further general assistance.
 
 
 35
 The central inquiry must be whether the county's decision to offer general assistance of over $1,000 to Mr. Collins only in the form of placement at the county care facility is rationally related to any legitimate governmental purpose, as required by the equal protection clause of the Constitution. In my opinion, the burden rests on Mr. Collins to establish that the decision is in fact irrational. He has met that burden.
 
 
 36
 The Supreme Court has stated that a plaintiff carries the burden of showing irrationality by convincing "the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker." Vance v. Bradley, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979) (citations omitted). See also Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981). I believe that the stipulated facts in the instant case belie any rational connection between the county ordinance at issue, as applied to Mr. Collins, and its purported justification--providing general welfare assistance to county residents at the lowest possible overall cost.
 
 
 37
 The parties stipulated that it would cost approximately $500 per month to keep Mr. Collins in the county care facility. Mr. Collins only requested $225 to sustain him at his own home in February of 1981 and has not requested more than $540 in general assistance from the county for any two-month period.[1] Thus, we have a situation in which the county seeks to impose an unwanted lifestyle on Mr. Collins even though this imposition will cost the taxpayers more. In its brief and at oral argument, the county suggested that the actual, or marginal, costs of keeping Mr. Collins at the county care facility were less than his requests for general assistance. While I agree that such an assertion, if unrebutted by plaintiff's evidence, might be rationally related to the goal of saving money, the stipulated facts in the present case are to the contrary.
 
 
 38
 I do not think that any county official could reasonably believe that all county residents requesting over $1,000 in general assistance will need more than the marginal costs necessary to maintain those residents at the county care facility. Since the county gives overall cost as its only justification for the ordinance at issue, and since the ordinance obviously sweeps into its coverage county residents such as Mr. Collins whose inclusion directly conflicts with that justification, I would find that the application of the ordinance to Mr. Collins deprives him of equal protection of the laws.
 
 
 
 [1]
 The Honorable Edward J. McManus, Chief Judge, United States District Court for the Northern District of Iowa
 
 
 [2]
 At oral argument, Collins' attorney stated that Collins is presently receiving Supplemental Security Income of some $270.00 per month
 
 
 [3]
 Collins asserts that residence in the facility would subject him to constant supervision and would result in a loss of privacy. Rules at the facility prohibit, among other things, possession of sharp objects, smoking in certain areas, and use of the telephone without permission
 
 
 [4]
 Section 6(8) states:
 Maximum limitation for any one person per year for the above benefits, disregarding residents of the County Care Facility, shall be One Thousand Dollars ($1,000.00) and One Hundred Dollars ($100.00) extra for each additional member of the family unit, unless extended relief is being provided under Section 8 of this Ordinance in which case the maximum shall be Two Thousand Five Hundred Dollars ($2,500.00) plus One Hundred Dollars ($100.00) for each additional member of a family unit.
 
 
 [5]
 The County asserts it lacks the authority to allow a nonattorney to represent Collins at the hearing because such assistance amounts to the practice of law which only the Iowa Supreme Court can authorize. We disagree. The hearing is informal; no technical rules of evidence or procedure are employed. The County is not represented by counsel. The applicant presents only the relevant facts and is not expected or required to make legal arguments. The hearing does not require "rendition of services for others that call for the professional judgment of a lawyer." Model Code of Professional Responsibility EC 3-5 (1979). Representation at the appeal hearing does not necessarily amount to the practice of law
 
 
 [6]
 The Third Circuit Court of Appeals held that due process required an informal oral hearing for social security recipients who were subject to recoupment of benefits received. The court held that Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976) required that the recipient have the opportunity to retain an attorney or have the informal assistance of a nonattorney. Mattern v. Mathews, 582 F.2d 248, 259 (3d Cir.1978), cert. denied, 443 U.S. 912, 99 S.Ct. 3101, 61 L.Ed.2d 876 (1979). We find this case to be supportive of our position in the present case
 
 
 [7]
 In the present case, the paralegal who represented Collins was supervised by an attorney employed by the Legal Services Corporation of Iowa
 
 
 [1]
 This $540 figure approximates Mr. Collins' request in September and October of 1980, and includes his $350 request to cover the expenses of his wife's funeral