George Raymond DANIELS, Delores Far-
ley, Jayne Feuhrer, Stella McMahan
and Bluette Caron, Appellants,

v.

WOODBURY COUNTY, IOWA; Donald
Erickson, Donald Lawrenson, Mark
Larnan, Kenneth Rodeen, Wayne
Thompson, individually and as mem-
bers of Woodbury County's Board of
Supervisors; Ralph Klocke, individual-
ly and as Woodbury County's General
Relief Director; Georgia Schieffer, in-
dividually and as General Assistant So-
cial Worker I, Appellees.

George Raymond DANIELS, Delores Far-
ley, Jayne Feuhrer, Stella McMahan
and Bluette Caron, Appellees,

v.

WOODBURY COUNTY, IOWA,
Appellant,

Donald Erickson, Donald Lawrenson,
Mark Larnan, Kenneth Rodeen, Wayne
Thompson, individually and as mem-
bers of Woodbury County's Board of
Supervisors; Ralph Klocke, individual-
ly and as Woodbury County's General
Relief Director; Georgia Schieffer, in-
dividually and as General Assistant So-
cial Worker I, Appellants.

Nos. 83–2026, 83–2107.

United States Court of Appeals,
Eighth Circuit.

Submitted April 11, 1984.

Decided Sept. 10, 1984.

Christine M. Luzzie, Legal Services Corporation of Iowa, Iowa City, Iowa, for appellants.

Roger E. McEntaffer, Sioux City, Iowa, for appellees Donald Erickson (deceased), Donald Lawrenson, Mark McLarnan, Kenneth Rodeen, Wayne Thompson, and Woodbury County Bd. of Supervisors.

Patrick C. McCormick, Woodbury County Atty., Sioux City, Iowa, for appellees Woodbury County, Iowa, Ralph Klocke & Georgia Schieffer.

Before BOWMAN, Circuit Judge, SWYGERT[*] and HENLEY, Senior Circuit Judges.

HENLEY, Senior Circuit Judge.

George Raymond Daniels and other applicants for general relief assistance in Woodbury County, Iowa brought suit under 42 U.S.C. § 1983 alleging, *inter alia,* that the administration of the general relief program violated the applicants' procedural due process rights. The defendants are Woodbury County, the Woodbury County Board of Supervisors, and an individual caseworker and her supervisor. The district court[1] granted the plaintiffs partial relief holding that defendants had violated the applicants' due process rights. The court enjoined further due process violations and awarded three of the plaintiffs damages.

Plaintiffs contend that the district court's injunction is not specific enough and seek a clearer enumeration of their due process rights. They also allege that the County's lack of standards for determining whether applicants are qualified for relief violates due process and that the level of benefits provided by the County is inadequate. Finally, plaintiffs contend that the district court erred in not certifying the case as a class action.

The two individual defendants and the County have cross-appealed. Defendants contend that the court erred in awarding damages to three of the plaintiffs and that the current procedures used by the County provide applicants with all the process that is due. They assert that the standards of eligibility and level of benefits provided by the County comport with both the Constitution and Iowa law. We affirm in part and remand the case to the district court for further proceedings consistent with this opinion.

## I. BACKGROUND

*The General Relief Program*

The general relief program involved here is a public assistance plan provided for by Iowa law and administered by the individual counties. *See* Iowa Code § 252 (1969). Woodbury County has enacted rules which set forth benefit levels, eligibility requirements, and program procedures.

These rules, as amended August 1, 1981, provide that upon application the applicant is entitled to a decision by the relief worker within twenty days. The worker must give the applicant an oral explanation of the decision with a written statement to be placed in the record. If the applicant is not present, a copy of the written statement is to be sent to the applicant. If the applicant receives less relief than requested, the rules provide that the applicant be informed, either orally or in writing, of the right to appeal to the County Board of Supervisors. If the applicant requests an appeal, the relief worker is to provide him or her with a copy of the appellate rules and "the reason for denial of the requested relief shall be stated to the applicant." A de novo hearing is then held before the Board of Supervisors with the applicant given the opportunity to present evidence and cross-examine witnesses. If the applicant is not present at the time the Board renders its decision, a written statement of the decision is to be mailed to the applicant. Apparently a statement of reasons for the decision is not required.

An applicant is entitled to review his file but all "third party information" is kept from him. The applicant is required to "cooperate" with the worker and relief can be denied if the applicant does not do so.

The substantive rules of the County differentiate between "poor" and "needy" persons. A "poor" person is a person with no property and who is unable to earn a

---

[*] The Honorable Luther M. Swygert, United States Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

[1] The Honorable Donald E. O'Brien, United States District Judge, Northern District of Iowa.

living due to disability.[2] A "needy" person is one who has "some property" and who has an immediate need for relief. Needy persons only qualify for relief on a temporary basis and must seek and obtain employment, usually with the County, as a precondition to eligibility. These restrictions apparently do not apply to poor persons.

Woodbury County employs two persons to operate the program. Georgia Schieffer is the fulltime general relief worker and makes most of the initial eligibility decisions. She is supervised by Ralph Klocke, the part-time general relief director. General relief is granted on a onetime basis for a specified period of time. The district court explained that "the concept of a 'termination' of benefits is not applicable to Woodbury County's general relief program. To obtain relief beyond the period for which relief was previously granted, another application is required." This relief program has been called a program of "last resort" wherein applicants are granted relief assistance for such items as food, clothing, shelter and medical expenses if the applicant shows immediate need for such assistance.

*The District Court's Decision*

After a hearing the district court entered a preliminary injunction specifying certain temporary procedures to be followed by defendants.[3] After several more days of trial, the court issued its final opinion. The court found that the actions of Schieffer and Klocke have resulted in arbitrary denials of benefits, in failures to notify claimants of their appeal rights, and in failures to provide claimants with the reasons for adverse decisions.[4] The court found that the evidence showed that the administration of the relief program "has not always been in accordance with its own stated rules."

In addition, the court found that three of the plaintiffs, George Daniels, Delores Farley and Bluette Caron, were deprived of their civil rights. The court found that, although none of the plaintiffs fit the definition of a "poor" person, some of them were incorrectly found not to be "needy," and thus were arbitrarily denied benefits. The court stated that the two general relief workers had violated the due process rights of citizens by arbitrarily denying benefits to eligible applicants and that this was done in the name of saving money or conserving fiscal resources.[5]

Based on its findings, the court made the following conclusions of law: (1) the fourteenth amendment requires that due process be observed in acting upon applications for relief since the state statute and County rules created a property interest in the receipt of welfare benefits; (2) the general relief program, as administered by Woodbury County, violated due process; (3) the Board of Supervisors and the individual members of the Board did not act with a clear disregard for plaintiffs' constitutional rights, and thus they were protected by good faith immunity; (4) Schieffer and Klocke should have known that their actions in arbitrarily denying benefits and in failing to give notice of appeal rights

---

2. This definition is derived from Iowa Code § 252.1 (1969), which provides:
 The words "poor" and "poor person" as used in this chapter shall be construed to mean those who have no property, exempt or otherwise, and are unable, because of physical or mental disabilities, to earn a living by labor; but this section shall not be construed to forbid aid to needy persons who have some means, when the board shall be of opinion that the same will be conducive to their welfare and the best interests of the public.

3. The court required oral or written explanations of denials of relief and written notice of appeal rights.

4. The court found that the practice of not informing applicants of their appeal rights was particularly widespread and that this was shown by the fact that no applicant had ever appealed an adverse decision without the assistance of Legal Services attorneys.

5. The court stated that for the last several years the County had budgeted $150,000.00 for the poor relief fund, but that each year "the employees, by design, had spent only $50,000.00 to $100,000.00, the amount varying from year to year."

were in violation of due process, and thus they were not protected by good faith immunity; (5) the County itself was also liable since the individual defendants acted pursuant to governmental custom; (6) the County was not protected by eleventh amendment immunity since the County received no state funds in operating the program; (7) the court determined that it had no authority to interfere with the actual benefit levels or eligibility standards; and (8) certification of a class action was not required.

The court awarded Daniels, Farley and Caron $500.00 each in damages and enjoined the two individual defendants and the County "from further actions in violation of the due process rights of general relief applicants."

## II. DISCUSSION

*Due Process*

We first address defendants' contention that no process at all is due because applicants for welfare benefits enjoy no property interest protected by the due process clause. They assert that there is no property interest in *eligibility* for a state conferred benefit as opposed to a *termination* of the benefit.

We reject the distinction which the defendants have asked us to draw between eligibility and termination of a benefit. "Applicants who have met the objective eligibility criteria of a wide variety of governmental programs have been held to be entitled to protection under the due process clause." *Holbrook v. Pitt,* 643 F.2d 1261, 1278 n. 35 (7th Cir.1981), and cases cited therein. The distinction oversimplifies the analysis which must be undertaken in determining whether a person has a constitutionally protected property interest.[6] The proper inquiry is whether plaintiffs have a legitimate claim of entitlement to relief assistance. *E.g., Hughes v. Whitmer,* 714 F.2d 1407, 1414 (8th Cir.1983), *cert. denied,*

—— U.S. ——, 104 S.Ct. 1275, 79 L.Ed.2d 680 (1984).

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Whether plaintiffs have a legitimate claim of entitlement thus depends upon the nature of the interest created by state or local rule. *Id.; Patteson v. Johnson,* 721 F.2d 228, 230 (8th Cir.1983); *Wilson v. Robinson,* 668 F.2d 380, 382 (8th Cir.1981). Therefore, the district court properly looked to Woodbury County's general relief rules in order to ascertain whether plaintiffs enjoyed a protected property interest.

■ We agree with the court's analysis that these rules create an expectation in the receipt of general assistance for all people eligible. The language of the Iowa statute and of the County's rules is mandatory. Iowa Code § 252.25 (Supp.1983) states that the County "shall" provide for the relief of poor persons. The County rules provide that a person "shall" be deemed eligible for relief if he or she meets established conditions. Just as in *Griffeth v. Detrich,* 603 F.2d 118 (9th Cir.1979), "the authorizing statute coupled with the implementing regulations of the county creates a legitimate claim of entitlement and expectancy of benefits in persons who claim to meet the eligibility requirements." *Id.* at 121; *see also Carey v. Quern,* 588 F.2d 230, 232 (7th Cir.1978); *White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir.1976); *Meyer v. Niles Township,* 477 F.Supp. 357, 361–62 (N.D.Ill.1979); *Alexander v. Silver-*

---

6. The suggested distinction is not unlike the one between "rights" and "privileges," which has been rejected by the Supreme Court. *Board of Regents v. Roth,* 408 U.S. 564, 571, 92 S.Ct. 2701,

2706, 33 L.Ed.2d 548 (1972); *Shapiro v. Thompson,* 394 U.S. 618, 627 n. 6, 89 S.Ct. 1322, 1327 n. 6, 22 L.Ed.2d 600 (1969).

*man,* 356 F.Supp. 1179, 1179–80 (E.D.Wis. 1973).[7] Plaintiffs are therefore entitled to minimum due process in the administration of Woodbury County's general relief program.

In determining what process is due, we must recognize that "due process is a flexible concept which requires procedural protections suited to the particular situation." *Collins v. Hoke,* 705 F.2d 959, 963 (8th Cir.1983) (citing *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). This necessarily involves a balancing of the private and public interests.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. at 903.

Plaintiffs contend that due process requires: (1) written decisions and the reasons for the decisions at both the initial decisional level and on appeal to the Board of Supervisors; (2) written notice of appeal rights; (3) written notice of any requirements for cooperation; and (4) full access to the applicant's file. They assert that anything less will result in a serious deprivation of due process and that defendants, unless made to comply with the above requirements, will continue to administer the relief program in an arbitrary and capricious manner.

Plaintiffs make a persuasive argument that the suggested procedures are necessary to reduce the risk of arbitrary decisionmaking in the administration of the general relief program. Certainly the private interests are substantial. Plaintiffs appear to be destitute and rely on public assistance to exist. Moreover, plaintiffs argue that because applicants for general relief are many times illiterate, the requirement that each step of the process be in writing would assist them substantially by allowing them to seek help both in understanding defendants' decisions and in preparing their cases for appeal. Finally, it is alleged that a requirement that initial decisions be in writing would not pose an insurmountable burden on the County since written records are already required to be kept by the current rules. A copy need only be provided to the applicant. Plaintiffs contend that the same is true for the Board's decision on appeal, the notice of appeal rights, and the cooperation requirement.

■ However, we are hesitant to hold that such requirements are constitutionally required since the district court did not directly review the current written rules in light of the *Mathews* balancing test. In other words, the court did not rule on whether the current rules are constitutionally sufficient or whether, as plaintiffs assert, more is required. What is certain is that the court did hold that the general relief program, as administered by the defendants, violated plaintiffs' due process rights. This finding is fully supported by the record and will not be disturbed. However, before deciding the validity of plaintiffs' suggested additional procedures, an initial determination must be made as to whether the current rules are constitutionally sufficient. We believe the district court is in a much better position to tailor the necessary safeguards in light of the particular circumstances of this case. Since the trial court had the first-hand opportunity to assess the evidence and listen to the witnesses, that court should initially decide whether the County's rules are an

---

7. Moreover, we assumed that some process was due in a prior decision in which we examined this same Iowa general relief program as administered in a different county. *See Collins v. Hoke,* 705 F.2d 959, 963 (8th Cir.1983) (due process requires that an applicant for general relief be entitled to nonattorney representation at the administrative appeal hearing).

insufficient check against arbitrary decisionmaking.

The court's failure to consider this question appears to be related to plaintiffs' attack on the injunction as being lacking in specificity. The court, in granting equitable relief, simply enjoined defendants "from further actions in violation of the due process rights of general relief applicants. The Court hopes that more explicit equitable relief will not be necessary."

■ Fed.R.Civ.P. 65(d) provides that "[e]very order granting an injunction ... shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail ... the act or acts sought to be restrained ...." *Schmidt v. Lessard*, 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974). In *Schmidt*, the Supreme Court identified two interests which the rule of specificity serves to advance. It prevents uncertainty on the part of those faced with injunctive orders and gives them explicit notice of what conduct is unlawful. Second, it allows a reviewing court "to know precisely what it is reviewing." *Id.* at 476–77, 94 S.Ct. at 715–716. To these two functions we would also add that a specific injunction allows those who are protected by its terms to know when the order is being violated so that they may then effectively police the order and enforce its mandate.

■ While we certainly understand the trial court's desire to maintain flexibility, we nevertheless must conclude that an injunction which does little or nothing more than order the defendants to obey the law is not specific enough. *See Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir.1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted."). Such an injunction serves none of the interests stated above. It neither provides plaintiff or defendant with a clear idea of what conduct is prohibited nor can we "begin to assess the correctness of the judgment entered ... without knowing its precise bounds." *Schmidt*, 414 U.S. at 477, 94 S.Ct. at 716. It is clear that the court's order in this case fails to meet Rule 65(d)'s requirements. For these reasons, and for the reasons previously expressed, we remand for further findings and for the entry of a more specific injunction.

Relatedly, we note that the court did not directly address plaintiffs' contention concerning the defendants' failure to find *any* applicants to meet the definition of a "poor" person in the twelve months preceding the last hearing in the district court. Plaintiffs contend that defendants' lack of standards or guidelines in defining "disability" and in interpreting the "no property" requirement have allowed the defendants to continually and arbitrarily deny plaintiffs the full relief to which they are entitled.

The Seventh Circuit has stated:

> In the context of eligibility for welfare assistance, due process requires at least that the assistance program be administered in such a way as to insure fairness and to avoid the risk of arbitrary decisionmaking. Typically this requirement is met through the adoption and implementation of ascertainable standards of eligibility.

*Carey*, 588 F.2d at 232 (citations omitted).

■ Although the district court found that the defendants' complete failure to find any applicants "poor" in recent memory was "amazing",[8] the court did not address plaintiffs' contention that this was due to defendants' failure to adopt ascertainable standards.[9] The defendants are

---

**8.** The court stated:

The Court further finds that the evidence disclosed that not a single person was found to be "poor" in the twelve months prior to the last hearing and that by design, the general relief worker, who handled the large majority of all applications, operated on the theory that there were no "poor" persons in the county, which is amazing under the circumstances with which we have been faced in the last few years.

**9.** Plaintiffs assert that, because of the complete lack of guidelines utilized in determining whether an applicant is "disabled" or "able-bodied," defendants have been able to require severely

correct in stating that a court is without power to establish what the County's standards of eligibility should be, *see Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); however, where the defendants have already established a category of eligible applicants, such as the category of "poor" persons here, the County may not arbitrarily and capriciously deny the availability of that category by lodging unlimited discretion in the hands of the decisionmaker. *See Carey*, 588 F.2d at 232; *White*, 530 F.2d at 754; *see also Franklin v. Shields*, 569 F.2d 784, 792 (4th Cir.1977), *cert. denied*, 435 U.S. 1003, 98 S.Ct. 1659, 56 L.Ed.2d 92 (1978); *Environmental Defense Fund, Inc. v. Ruckelshaus*, 439 F.2d 584, 596–98 (D.C.Cir.1971); *Holmes v. New York City Housing Authority*, 398 F.2d 262, 265 (2d Cir.1968); *Hornsby v. Allen*, 326 F.2d 605, 610 (5th Cir.1964). If the court were to find a constitutional violation in this regard, the remedy would not be for the court to define the standards. Instead, defendants would be required to submit proposed standards subject to the court's approval. *See, e.g., Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971). Thus, while a court may not usurp the clearly legislative function of defining the eligibility standards in the first instance, it may require such standards to be promulgated and followed in order to limit and direct the decisionmaker's discretion.

"Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad ...." *Id.* at 15, 91 S.Ct. at 1276.

The defendants' complete inability to find *any* applicants to be "poor" certainly appears arbitrary. On the other hand, it may well be that the disability and property requirements are sufficiently defined and that defendants were justified in not finding any applicants to meet their definitions.[10] On remand, the court should specifically address this issue.

*Failure to Provide for Applicants' "Actual Needs"*

■ Plaintiffs contend that the level of benefits provided by Woodbury County is inadequate to provide them with the means to meet their actual needs. They assert that the current levels of benefits are so arbitrary and so unrealistic in fact that they violate substantive due process. They also contend in a pendent claim that Iowa law requires that the actual needs of poor persons be met.

We agree with the district court that the Iowa legislature has vested broad discretion in the individual counties which administer the program to set the actual level of benefits. Iowa Code § 252.27 (Supp.1983) states that the amount of benefits is to be determined by the boards of supervisors of each individual county. Although the levels of benefits are, as the district court stated, "unrealistically low," [11] we believe

---

disabled people to work prior to receiving benefits. When these people are then unable to complete the work assignments, they are found ineligible for assistance, thus resulting in arbitrary denials of benefits. They point to several applicants, such as George Daniels, Delores Farley and Edna Moore, who were under doctors' orders not to work and yet were nevertheless found to be "able-bodied."

**10.** The district court did find that none of the named plaintiffs met the statutory definition of a "poor person" contained in Iowa Code § 252.1 (1969). However, it is unclear whether this conclusion was based on the fact that plaintiffs were not disabled, based on a finding that plaintiffs had property, or both. Despite the above finding, we believe that plaintiffs are entitled to a more specific resolution of the precise issue

they raise: whether the defendants, by allegedly using essentially unbridled and unchecked discretion, have been able to engage in wholesale denials of benefits.

**11.** The level of benefits available under the County's rules have not been updated for several years. As a result, the current costs of food and shelter exceed the levels of benefits provided by the County. For example, the maximum food allowance for a family of four is $35.00 a week with an $8.00 a month maximum for toilet tissue, soap, tooth paste, and all other incidental household expenses. The rent allowance for a family of four is $135.00 a month with a utility allowance of $35.00 a month in the summer and $60.00 a month in the winter. These amounts represent the maximum allowances according to the County's regulations dated August 1, 1981.

the Board was within statutory authority in setting the current assistance levels. *See Collins,* 705 F.2d at 962.

Nor are we persuaded that the benefit levels violate substantive due process. The benefits bear a rational relationship to the legitimate government interest in providing for the needs of the poor. No more is constitutionally required. *See Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960). "Welfare benefits are not a fundamental right, and neither the State or Federal Government is under any sort of constitutional obligation to guarantee minimum levels of support." *Lavine v. Milne,* 424 U.S. 577, 584 n. 9, 96 S.Ct. 1010, 1015 n. 9, 47 L.Ed.2d 249 (1976).

*Damages*

In their cross-appeal, defendants Woodbury County, Georgia Schieffer and Ralph Klocke attack the court's award of $500.00 each in damages to plaintiffs Daniels, Farley and Caron. They allege that the record fails to establish deprivations of plaintiffs' due process rights. We disagree.

The evidence clearly reflects that George Daniels was deprived of his civil rights. Schieffer told Daniels that he was required to complete a work project prior to being considered eligible for relief. Thus, Schieffer found Daniels to be "able-bodied" under the regulations. However, at the time of his application, Daniels suffered from emphysema, asthma and was recovering from knife wounds to his leg which he received when thieves broke into his apartment. Further, at the time, Daniels was overweight, and, due to his disabilities, could walk no more than half a block. In addition, it appears that Schieffer based her decision on out-of-date medical information and did not provide Daniels with a written explanation for the denial of benefits when one was requested. We agree with the district court that the decision that Daniels was in fact able-bodied "was arbi-

trary, unfair, and without substantial factual basis."

Moreover, the record also abundantly supports the district court's findings with respect to the other two plaintiffs who were awarded damages. Delores Farley was neither provided with any explanation of the reasons her application was denied nor was she notified of her appeal rights. Bluette Caron was not informed of the Board's decision on her appeal after she was denied relief by Schieffer. In addition, both Farley and Caron initially were denied relief assistance when it appears they were in fact eligible.

With respect to the amount of damages, $500.00 to each of the plaintiffs does not appear excessive. Plaintiffs were experiencing serious financial hardships and, as the district court stated, "[t]he arbitrary and insensitive treatment they received in applying for general relief clearly caused a significant amount of emotional distress in the plaintiffs' lives." These considerations are proper in awarding damages under § 1983. *E.g., Carey v. Piphus,* 435 U.S. 247, 264, 98 S.Ct. 1042, 1052, 55 L.Ed.2d 252 (1978); *see generally Herrera v. Valentine,* 653 F.2d 1220 (8th Cir.1981). Plaintiffs are entitled to nominal damages for the deprivation of procedural due process even in the absence of proof of actual injury. *Carey,* 435 U.S. at 248, 98 S.Ct. at 1044. Moreover, actual injury has been proven here. The arbitrary decisions made by defendants caused plaintiffs to be without greatly needed relief assistance. The trial court specifically noted that the distress defendants' actions caused was evident even at the time of trial when their testimony was heard. We affirm the district court's award of damages.[12]

*Class Certification*

The plaintiffs sought certification of a class composed of all present and future applicants for general relief in Woodbury County. The district court denied certification based on lack of numeros-

---

12. Since none of the court's findings concerning legislative, judicial, or good faith immunity have been attacked on appeal by either plaintiffs or defendants, we need not discuss the court's conclusions in this regard in any detail. Suffice it to say that we find the court's conclusions fully supported by the evidence and in accord with the relevant caselaw.

ity and because it did not believe that the certification of a class was warranted in light of the individual nature of the due process violations.

The requirements for class certification under Fed.R.Civ.P. 23(a) are:

(i) "Numerosity"—the class must be "so numerous that joinder of all members is impracticable;" (ii) "commonality"—the presence of "questions of law or fact common to the class;" (iii) "typicality"— the claims or defenses of the class representative must be "typical of the claims or defenses of the class;" and (iv) a class representative that will "fairly and adequately protect the interests of the class."

*Paxton v. Union National Bank,* 688 F.2d 552, 559 (8th Cir.1982), *cert. denied,* 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983). We note that the trial court has wide discretion in ruling on a request for class certification. *Darms v. McCulloch Oil Corp.,* 720 F.2d 490, 493 (8th Cir.1983). "[I]ts decision on the issue will not be disturbed on appeal absent an abuse of that discretion." *Id.*

No abuse of discretion has been shown here. The court could properly find that the number of plaintiffs suffering procedural due process violations was not so numerous that joinder would prove to be impracticable. Moreover, although there was evidence that other applicants had experienced unfair treatment, the nature and type of due process violation varied greatly from applicant to applicant. In addition, even some of the named plaintiffs were not shown to have suffered deprivations of their constitutional rights. We find no error in the trial court's conclusion that the requirements of Rule 23(a) were not met.

### III. CONCLUSION

We affirm the district court's award of damages, denial of class certification, and its conclusions concerning defendants' failure to provide for applicants' actual needs. We also affirm the court's finding that defendants have violated the due process rights of applicants in the manner in which they have administered the program. We remand for the court to determine whether the County's current procedural rules are consistent with minimum due process standards. The court should examine these rules in light of the balancing test enunciated in *Mathews v. Eldridge, supra.* If the court finds that the rules are constitutionally sufficient, it should enter a more specific injunction enjoining the defendants from violating their own rules; the order should specify which rules are required to meet the demands of the Constitution. If the court finds the current rules to be an insufficient check against arbitrary decisionmaking, it may require defendants to propose additional or substitute safeguards, and then enter a more specific order consonant with its determinations.

The court should also examine the question whether defendants' alleged lack of standards in defining the "disability" and "no property" requirements has resulted in a denial of applicants' due process rights. If the court finds current definitions inadequate, it may require the County to promulgate ascertainable standards of eligibility in defining the two terms. The County may then submit them to the court subject to its approval. In all other respects, the court's order is affirmed.