[Civ. No. 39724. Second Dist., Div. Two. Nov. 22, 1972.]

ROGER C. ZOBRISCKY, Plaintiff and Appellant, v.
LOS ANGELES COUNTY et al., Defendants and Respondents.

## COUNSEL

Daniel S. Brunner and Valerie Vanaman for Plaintiff and Appellant.

John D. Maharg, County Counsel, and Louis B. Hays, Deputy County Counsel, for Defendants and Respondents.

## OPINION

**FLEMING, J.**—Roger C. Zobriscky applied to the County of Los Angeles Department of Public Social Services for general relief.[1] When the depart-

---

[1] Welfare and Institutions Code section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such

ment denied his application and refused his request for an evidentiary hearing to contest the denial, Zobriscky, on behalf of himself and all others similarly situated, petitioned the trial court to mandate the county, the department, and the departmental director to hold an evidentiary hearing on his application. The trial court denied his petition.[2] Zobriscky has appealed the judgment of denial, contending the due process clause of the Fourteenth Amendment to the United States Constitution entitles him to an evidentiary hearing on the merits of his application for general relief. In support of his position he cites *Goldberg* v. *Kelly* (1970) 397 U.S. 254 [25 L.Ed.2d 287, 90 S.Ct. 1011], which holds that due process of law requires a "fair hearing" before welfare payments may be terminated.

The issue is whether as a matter of constitutional law Zobriscky is entitled to an evidentiary hearing in connection with the denial of his application for public welfare benefits. This issue is not directly controlled by the ruling in *Goldberg,* for the latter only compels a hearing when existing welfare payments are being terminated. Said the Supreme Court: "The question for decision is whether a State that *terminates* public assistance payments to a particular recipient without affording him the opportunity for an evidentiary hearing prior to *termination* denies the recipient procedural due process in violation of the Due Process Clause of the Fourteenth Amendment. [Italics ours.] [T]he crucial factor . . . is that *termination* [italics ours] of aid pending resolution of a controversy over eligibility may deprive an *eligible* [italics in original] recipient of the very means by which to live while he waits." (397 U.S. at pp. 255, 264 [25 L.Ed.2d at pp. 292, 297].) The court's opinion makes clear that the court focused its attention on termination of an established welfare benefit and did not consider procedure for the denial of a welfare benefit in the first instance. (See also, *Daniel* v. *Goliday* (1970) 398 U.S. 73 [26 L.Ed.2d 57, 90 S.Ct. 1722].) Although one federal district court has interpreted *Goldberg* to require an evidentiary hearing whenever an application for a welfare benefit has been denied (*Barnett* v. *Lindsay* (D.C.Utah 1970) 319 F.Supp. 610, 612), we are not persuaded by the district court's opinion that *Goldberg* is to be so interpreted.[3] In our view the necessity for an evidentiary hearing to deny an application for welfare benefits remains open.

---

persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

[2]In this same action the trial court issued a writ of mandate on the petition of Laura Merling, who claimed the right to written notice and fair hearing in the reduction of her *established* general relief benefits.

[3]A somewhat related ruling requires an evidentiary hearing before an applicant's ineligibility for admission to public housing may be determined. (*Davis* v. *Toledo Metropolitan Housing Authority* (N.D.Ohio 1970) 311 F.Supp. 795, 796.) On this

Modern government offers its citizens a wide spectrum of benefits, including public employment, public contracts, public education, tax exemptions, loans, subsidies, franchises, and licenses of all kinds. In view of the number, sweep, and scope of these benefits we do not believe an evidentiary hearing can be routinely required each time an application for one of those benefits is denied. Were the law otherwise the resulting burden on government would be overwhelming. For example, an affidavit in the case at bench indicates that in the County of Los Angeles alone over 7,000 applications for general relief are received each month, of which less than 1,000 are accepted. Thus, the grant of Zobriscky's petition would mandate over 6,000 evidentiary hearings each month in the County of Los Angeles for this one benefit offered by government. The resulting increase in the cost of administration of the general relief program brought about by the cost of such hearings would necessarily reduce the net amount of moneys available for general relief purposes, and in this sense mandatory evidentiary hearings would work at cross-purposes to the primary objective of welfare itself.

We conclude that any general requirement for an evidentiary hearing in connection with the denial of an application for welfare benefits is neither necessary nor desirable nor required as a matter of due process of law.

Zobriscky, of course, is entitled to apply for judicial relief to ensure that the county has acted fairly and has followed its own standards and procedures in the disposition of his application. If he can make a prima facie showing that his application has been improperly denied, the courts by appropriate order may remedy any injustice he appears to have suffered. Such a remedial order might well require the administrative agency directly concerned to hold an evidentiary hearing. But Zobriscky presented no facts to justify judicial relief. His petition merely alleged that he was a resident of the County of Los Angeles, that he "was forced to apply" to respondents for general relief, that his application was denied, and that respondents refused to hold an evidentiary hearing to allow him to contest the denial. He did not allege he was entitled to general relief under some specific standards, nor did he aver that he had exhausted the administrative-appeal procedures made available to him by respondents. He pleaded no facts that would classify him as "incompetent, poor, indigent," or "incapacitated by age, disease, or accident, [and] not supported and relieved by [his] relatives or friends, by [his] own means, or by state hospitals or other state or private institutions." (Welf. & Inst. Code, § 17000.) Zobriscky therefore did not

point we find the ruling to the contrary by the New York Court of Appeals more persuasive. (*Sumpter* v. *White Plains Housing Authority* (1972) 29 N.Y.2d 420 [328 N.Y.S.2d 649, 278 N.E.2d 892].)

make a prima facie showing that the department had abused its discretion in denying him general relief (see *Mooney* v. *Pickett,* 4 Cal.3d 669, 678-679 [94 Cal.Rptr. 279, 483 P.2d 1231]), and in the absence of such a showing his petition for mandate was properly denied.

The judgment is affirmed.

Herndon, Acting P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 17, 1973.