406 F.Supp. 1134 (1976)
Sharon BAKER-CHAPUT
v.
Gordon CAMMETT as Overseer of the Poor for the Town of Raymond, et al.
Civ. A. No. 75-133.
United States District Court, D. New Hampshire.
January 23, 1976.
*1135 Barbara Sard, Staff Atty., N. H. Legal Assistance, Manchester, N. H., for plaintiffs.
Peter F. Kearns, Kearns & Colliander, Exeter, N. H., for defendants.

*1136 OPINION
BOWNES, District Judge.
Plaintiff alleges that the Town of Raymond administers its general assistance program, NH RSA 165:1, without any written standards and thereby contravenes her Fourteenth Amendment guarantees of due process and equal protection of the laws. This is not a class action.
Defendant Gordon Cammett is a Raymond Town Selectman and the Overseer of Public Welfare. He is statutorily charged with the administration of Raymond's general assistance program. NH RSA 41:46 (Supp.1975). Defendants Ivan Reed and James Turner are Raymond Selectmen and statutorily charged with the management of the Town's "prudential affairs." NH RSA 41:8. Also named as a defendant is Ralph Southwick, County Welfare Commissioner for Rockingham County.
Jurisdiction is based on 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3).

FACTS
The basic facts are not in dispute. In April of 1975, plaintiff was thirty-one years old, single, and five months pregnant. Her weekly income of $20.00 was insufficient to meet her necessary and minimum monthly expenses; her landlord was threatening her with eviction and the utilities company was threatening to cut off her electricity.
On April 14, 1975, plaintiff applied to the Town of Raymond Selectmen for general assistance. NH RSA 165:1. Because talking to Cammett and the other Selectmen made plaintiff nervous and caused her physical discomfort, she did not meet with them personally and, instead, submitted her application through a secretary. On April 28, 1975, plaintiff was informed by letter that her application for assistance was denied. The letter went on to state that she could receive assistance only if she moved into the center of town and agreed to an attachment being placed on her truck and furniture. (Exhibit A, attached to plaintiff's Complaint.)[1]
On June 6, 1975, a hearing for the issuance of a temporary restraining order was held. On June 9, 1975, the parties entered into a consent decree and I dismissed the suit as being moot.
On September 22, 1975, plaintiff moved to have the mootness order vacated due to defendants' failure to meet the consent decree conditions and their unwillingness to promulgate written general assistance standards.
Although plaintiff is now receiving AFDC benefits, I found that
[i]n light of defendants' failure to agree to administer the program pursuant to written and ascertainable standards, "[t]he defendant is free to return to his old ways." W. T. Grant, supra, 345 U.S. [629] at 632 [73 S.Ct. 894, 97 L.Ed. 1303.] This fact is "enough to prevent mootness because of the `public interest in having the legality of the practices settled.'" DeFunis v. Odegaard, 416 U.S. 312, 318 [94 S.Ct. 1704, 40 L.Ed.2d 164] (1974). Baker-Chaput v. Cammett, Civ.No. 75-133 (D.N.H. filed Sept. 30, 1975).
Cf. Frost v. Weinberger, 515 F.2d 57, 62-65 (2d Cir. 1975). But see, Pregent v. N. H. Dept. of Employment Sec., 361 F.Supp. 782 (D.N.H.1973) (three-judge court), vacated, 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974), on remand, Pregent v. The State of N. H. Dept. of Civil Employment, Civ.No. 72-160 (D.N.H. filed Sept. 23, 1974) (dismissing the suit on mootness grounds). In the instant case, however, it is possible that plaintiff may in the future seek general assistance from the defendants.
*1137 The parties have submitted the case on cross-motions for summary judgment.

GENERAL ASSISTANCE
New Hampshire has two systems of public welfare: "categorical assistance programs," 42 U.S.C. § 601 et seq. and 42 U.S.C. § 801 et seq., and the "general assistance program," NH RSA 165:1. The categorical assistance programs are federally funded and administered by a central state agency, whereas the general assistance program is locally funded and administered. See generally, Kravit, Standards for General Assistance in New Hampshire: An Analysis and Proposal, 16 N.H.B.J. 136 (1974).
The general assistance program is one of New Hampshire's oldest statutes, having its origin in the English Poor Laws passed in 1601. The statute reads as follows:
Whenever a person in any town shall be poor and unable to support himself he shall be relieved and maintained by the overseers of public welfare of such town, whether he has a settlement there or not.[2] RSA 165:1
The statute is to be administered so as to promote its "humanitarian purpose," Derry v. County of Rockingham, 64 N.H. 499, 500, 14 A. 866 (1888), and is "simply one of the benefits of good government and humane laws." Hollis v. Davis, 56 N.H. 74, 86 (1875). Financial need and an inability to support one's self are the sole criteria for eligibility. Town of Poplin v. Town of Hawke, 8 N.H. 305 (1836); Glidden v. Town of Unity, 30 N.H. 104, 122 (1855).

THE LAW
The question is whether the due process clause of the United States Constitution mandates that defendants administer the general assistance program pursuant to written, objective, and ascertainable standards. This is essentially a question of substantive due process. I believe that procedural due process and substantive due process are inextricably intertwined and that the issue should be resolved within the Goldberg and Roth analytical framework.[3]
To determine whether there has been a violation of the due process clause, the court must engage in a two-step analysis. First, an inquiry must be made to determine whether the private interest at stake is a "property" or "liberty" interest protected by the Fourteenth Amendment. Board of Regents v. Roth, 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In the context of this case, the question is whether an applicant who has satisfied the statutory requisites for aid has a "property interest" in the benefits. If it is found that the applicant has a protectable Fourteenth Amendment interest, then the second step is to weigh the individual's interest in being informed of the standards *1138 regarding welfare eligibility and assistance levels against the government's interest in not promulgating these standards. Cf. Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Morrissey v. Brewer, 408 U.S. 471, 484-90, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).
Goldberg involved the narrow issue of "whether the Due Process Clause requires that the [Welfare] recipient be afforded an evidentiary hearing before the termination of benefits." Id., 397 U.S. at 260, 90 S.Ct. at 1016. The Court found that the "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits," id. at 264, 90 S.Ct. at 1018, and that due process required the convening of a pretermination hearing. The Supreme Court has not specifically dealt with the issue presented in this case  whether the denial of an application for welfare benefits triggers due process considerations. Cf. Daniel v. Goliday, 398 U.S. 73, 90 S.Ct. 1722, 26 L.Ed.2d 57 (1970); Wheeler v. Montgomery, 397 U.S. 280, 282-84, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970) (Burger, C. J., dissenting).[4]
It has been held that, because there is no constitutional right to welfare, due process guarantees should not be extended to the denied applicant. Zobriscky v. Los Angeles County, 28 Cal. App.3d 930, 105 Cal.Rptr. 121 (1972). While plaintiff was not receiving any welfare benefits and, therefore, in a technical sense, was not relying on welfare payments for her daily support, stark facts are that she desperately needed assistance in order to live. The important determination is whether she was statutorily entitled to receive benefits; the inquiry should focus on entitlement and not on dependency. See, Barnett v. Lindsay, 319 F.Supp. 610 (D.Utah 1970); Alexander v. Silverman, 356 F.Supp. 1179 (E.D.Wis.1973). See generally, Note, The Rejected Applicant For General Assistance And His Right To A Review, 25 Hastings L.J. 678 (1974).[5]
The key question is whether the person seeking the protection of the Fourteenth Amendment has "a legitimate, objectively justifiable claim to the benefits of the governmental program." Geneva Towers Tenants Org. v. Federated Mortgage Inv., 504 F.2d 483, 489 (9th Cir. 1974). In order to qualify as a Fourteenth Amendment interest, it must be shown that the deprived individual has a legitimate claim of entitlement which is rooted in a legal obligation. Roth, supra, 408 U.S. 564 at 577, 92 S.Ct. 2701, 33 L.Ed.2d 548. Plaintiff, like the Goldberg plaintiffs, bases her claim on a state statute under which she has made a prima facie showing of eligibility. She has shown both financial need and an inability to support herself. Since, under the statute, she has a right to general assistance from the town, it follows that she has a "property" interest in general assistance benefits and that due process considerations attached upon her application for public welfare.
Because I have found that plaintiff has a protectable Fourteenth Amendment *1139 interest, I must address myself to the issue of what process is "due" her.
Due process is an "elusive concept," and the determination of what process is "due" "must being with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961).
Plaintiff's interests in knowing what standards are to be followed so that her welfare benefits will not be arbitrarily withheld or circumscribed must be weighed against the defendants' interests in determining welfare eligibility on an ad hoc basis.
Plaintiff does not specifically seek the traditional due process requirements of notice, hearing, and written statement of the reasons for denial. Cf. Wheeler v. State, 341 A.2d 777 (N.H.1975). Instead, she claims that, as a matter of constitutional due process, defendants must administer the general welfare program in accord with defined written standards.
I recognize that there is, in some limited instances, "a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency." Securities Comm'n v. Chenery Corp., 332 U.S. 194, 203, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947). When an agency is presented with a situation which it could not have reasonably foreseen or in which it does not possess sufficient expertise, it would be unwise to prevent it from proceeding on an ad hoc basis. A rigid set of standards would only retard the administrative process. But that is not the case here.
Defendants had considerable experience and knowledge in matters of general assistance. Plaintiff, hungry and destitute, came to them for help. The decision whether to grant her the relief requested rested solely within the defendants' unfettered and unguided discretion.
In upholding the constitutionality of a Pennsylvania regulation which denied public assistance to persons if they lived "as a family unit with relatives who were not legally liable for their support," the district court went on to state that public assistance
is not merely an aid to an individual, but an aid to preserve community life and society, and its administration must be guided by standards of need prescribed by duly authorized bodies, here the State Board of Public Assistance. Sweeney v. State Board of Public Assistance, 36 F.Supp. 171, 174 (M.D.Pa.1940), aff'd 119 F.2d 1023 (3d Cir.), cert. denied, 314 U.S. 611, [62 S.Ct. 74, 86 L.Ed. 491] (1941). (Emphasis added.)
The Supreme Court has noted that, under the federal general assistance program for needy Indians, "the determination of eligibility cannot be made on an ad hoc basis by the dispenser of the funds." Morton v. Ruiz, 415 U.S. 199, 232, 94 S.Ct. 1055, 1073, 39 L.Ed.2d 270 (1974).
The standardless administration of general assistance places the hungry and the poor at the administrator's whim and does little to foster the belief, so important in a democratic society, that justice has been served. In another context, Justice Douglas noted that
[l]aw has reached its finest moments when it has freed man from the unlimited discretion of some ruler, some civil or military official, some bureaucrat. Where discretion is absolute, man has always suffered. At times it has been his property that has been invaded; at times, his privacy; at times, his liberty of movement; at times, his freedom of thought; at times, his life. Absolute discretion is a ruthless master. It is more destructive of freedom than any of man's other inventions. United States v. Wunderlich, 342 U.S. 98, 101, 72 S.Ct. 154, *1140 156, 96 L.Ed. 113 (1951) (Douglas, J., dissenting).
The applicant must be afforded the opportunity to know beforehand what substantive criteria she had to meet in order to obtain general assistance. Hornsby v. Allen, 326 F.2d 605, 610 (5th Cir. 1964); Raper v. Lucey, 488 F.2d 748, 753 (1st Cir. 1973); Avard v. Dupuis, 376 F.Supp. 479, 483 (D.N.H.1974) (three-judge court).[6] Without the issuance of standards, the initial reasons for denial may change and be replaced with new and differing reasons which the applicant is unable to contest.
I rule that the establishment of written, objective, and ascertainable standards is an elementary and intrinsic part of due process. Cf. Block v. Thompson, 472 F.2d 587 (5th Cir. 1973); Environmental Defense Fund, Inc. v. Ruckelshaus, 142 U.S.App.D.C. 74, 439 F.2d 584, 598 (1971); Holmes v. New York City Housing Authority, 398 F.2d 262 (2d Cir. 1968); Hornsby v. Allen, supra; Welfare Fighters Organization v. Center Township, Cause No. IP 71-C-292 (S.D.Ind. filed April 30, 1974) (Stipulation for Entry of Judgment); Bogan v. New London Housing Authority, 366 F.Supp. 861, 866-67 (D.Conn.1973); Harnett v. Board of Zoning, Subdivision & Bldg. App., 350 F.Supp. 1159, 1161 (D.Virg.Is.1972); Ruffin v. Housing Authority of New Orleans, 301 F.Supp. 251, 253 n. 3 (E.D.La.1969); Colon v. Tompkins Square Neighbors, Inc., 294 F.Supp. 134, 139 (S.D.N.Y.1968). But see, Arnett v. Kennedy, 416 U.S. 134, 202, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part); Jarecha v. Immigration and Naturalization Service, 417 F.2d 220, 224 (5th Cir. 1969).
In examining the defendants interests, it could be argued that the standardless administration of the general assistance program is in the best interests of both the individual and society; it provides the Overseer of Public Welfare with a flexibility that standards may rigidify. In a small state, such as New Hampshire, there is a desire to retard the bureaucratic paralysis that cumbersome administrative procedures produce. But due process requires that we be ruled by law and not by fiat. Wisconsin v. Constantineau, 400 U.S. 433, 436, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). The absence of standards creates a void in which malice, vindictiveness, intolerance or prejudice can fester. Plaintiff has a paramount interest in receiving those benefits for which she statutorily qualifies. In addition, as a member of our society, she has an interest not only in being treated fairly by the administrative agency, but, just as important, in believing that she has been treated fairly. A standardless method of administration negates these interests.
Besides the traditional arguments of expediency and efficacy, defendants have failed to set forth any interests in support of the standardless administration of the general assistance program. In weighing the interests of the parties, I find that the "eligible" welfare applicant's interest in receiving general assistance pursuant to written standards outweighs the defendants' interest in the standardless administration of the general assistance program.
It has been recognized that the defendants' interest in "efficiency and efficacy" does not outweigh the individual's interest in being protected from arbitrary and capricious decision making. Cf. Stanley v. Illinois, 405 U.S. 645, 656, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). To require the defendants to formulate standards "will neither force unrealistic rigidity in the content of those standards nor bring about administrative inefficiency." Hill v. Federal Power Commission, 335 F.2d 355, 363 (5th Cir. 1964). Nor will this requirement cause unreasonable administrative costs. Cf. Richardson *1141 v. Perales, 402 U.S. 389, 406, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
I take judicial notice that the New Hampshire Municipal Association and the New Hampshire Legal Assistance Program have published proposed written standards for general assistance.
Plaintiff's motion for summary judgment is granted.
The court will maintain jurisdiction and the parties are given sixty days to submit written welfare standards and guidelines so that a specific decree can issue; either by consent or by order of the court.
So ordered.
NOTES
[1] In response to the question whether he had ever "taken a lien in a personal property case," Cammett answered "no." (Deposition of Gordon Cammett at 59.) He stated that he never intended to take a lien on plaintiff's personal property and that she had misunderstood what he had said. This letter indicates that plaintiff's misunderstanding was justifiable.
[2] Ultimate financial responsibility for the money expended in order to support a "pauper" is determined by New Hampshire's one-year settlement law. NH RSA 164-A:1; 165:19; and 166:1.
[3] Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Board of Regents v. Roth, 408 U.S 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

At one time, courts held, under the nondelegation doctrine, that it was impermissible for the legislature to delegate power to an administrative agency without providing the agency with general regulatory standards. Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The next series of constitutional challenges focused on the question whether administrative standards were sufficiently definite. Zemel v. Rusk, 381 U.S. 1, 17, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). Justice Marshall has noted that "[t]he extent to which the State may commit to administrative agencies the unreviewable authority to restrict preexisting rights is one of the great questions of constitutional law about which courts and commentators have debated for generations * * *." Ortwein v. Schwab, 410 U.S. 656, 666, 93 S.Ct. 1172, 1178, 35 L.Ed.2d 572 (1973) (Marshall, J. dissenting). As disclosed by the text, infra, I do not base my decision on a nondelegation theory. I believe that the right to be advised and informed of welfare eligibility criteria is an essential part of due process whether it be called procedural or substantive.
[4] Courts have recognized that denied applicants may have either a "property" or "liberty" interest in the benefit being denied. Goldsmith v. Board of Tax Appeals, 270 U.S. 117, [46 S.Ct. 215, 70 L.Ed. 494] (1926) (application to practice before the Board of Tax Appeals); Schware v. Board of Bar Examiners, 353 U.S. 232, [77 S.Ct. 752, 1 L.Ed.2d 796] (1957) (application to practice law); Shaw v. Hospital Authority of Cobb County, 507 F.2d 625 (5th Cir. 1975) (application for staff privileges at County Hospital); Don v. Okmulgee Memorial Hospital, 443 F.2d 234 (10th Cir. 1971) (application for medical staff privileges); Raper v. Lucey, 488 F.2d 748 (1st Cir. 1973) (application for driver's license); Hornsby v. Allen, 326 F.2d 605 (5th Cir. 1964) (application for liquor license). But see, Medina v. Rudman, Civ.No. 75-297 (D.N.H. filed Jan. 9, 1976) (applicant for a license to operate a Greyhound track has no cognizable Fourteenth Amendment interest).
[5] Applicants who are denied "categorical assistance" are statutorily entitled to a due process hearing. 42 U.S.C. § 602(a)(4) (aid to families with dependent children); 42 U.S.C. § 1383(c)(1) (supplemental security income for the aged, blind and disabled).
[6] Raper noted that it would be a "much closer question" if plaintiff sought as a matter of due process to compel the Massachusetts Motor Vehicle Board of Appeals to promulgate "particular appellate standards or procedures." Id., 488 F.2d n. 6, 753. I do not believe that this hypothetical is applicable to the present case.