**Ann Marie COLSON, on behalf of her infant daughter, Laura COLSON; Darryl Battaglia, Valerie White, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Eugene SILLMAN, as Medical Director of Erie County; David Bogdan, as Supervisor of Erie County's Physically Handicapped Children's Program; Donald B. Thomas, as Commissioner of the Erie County Department of Health; Fe A. Cardona, as Director of the Special Children Services, Bureau of Child Health, New York State Department of Health; and David Axlerod, as Commissioner of the New York State Department of Health, Defendants.**

No. 85–CV–1815A.

United States District Court,
W.D. New York.

Dec. 9, 1992.

**1184**

James Sheldon, Jr., Neighborhood Legal Services, Inc., Buffalo, NY, for plaintiffs.

Andrew Lipkind, Asst. Atty. Gen. (Robert Abrams, Atty. Gen., State of N.Y., of counsel), Buffalo, NY, for defendants Axelrod and Cardona.

Alan P. Gerstman, Asst. County Atty. (Patrick H. NeMoyer, Erie County Atty., of counsel), Buffalo, NY, for defendants Bogdan, Sillman and Thomas.

## DECISION AND ORDER

ARCARA, District Judge.

### INTRODUCTION

Plaintiffs brought this action seeking declaratory, injunctive and monetary relief against defendants for alleged procedural and substantive deficiencies in the administration of the Erie County Physically Handi-capped Childrens' Program ("PHCP"). The alleged deficiencies concern defendants' failure to provide program applicants with timely written notice of the outcome of their application and the lack of an administrative appeal procedure, which allegedly violate plaintiffs' due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and (4) and 42 U.S.C. § 1983.

Plaintiffs moved for summary judgment pursuant to Fed.R.Civ.P. 56. The Court ordered the parties to brief the issue of whether applicants for a government benefits program have an "entitlement" implicating due process rights under the United States Constitution. After reviewing the papers and hearing oral argument from counsel, the Court grants plaintiffs partial summary judgment for the reasons stated herein.

### BACKGROUND

This lawsuit arises out of the manner in which Erie County and New York State manage the PHCP. The PHCP is a program, operated by the Erie County Department of Health pursuant to N.Y.Pub.Health Law § 2582 (McKinney, Supp.1992), which provides medical services for children who suffer from physical disabilities. In order to qualify for aid under the PHCP, specific criteria must be satisfied as to age, family income, diagnosis and exhaustion of other potential sources of payment. Additionally, the requested services must be medically necessary.

Once the PHCP determines that a child is eligible for coverage under the program, a request for specific services and medical equipment can be filed. Accompanying the request can be supporting documents from, among others, the child's physician or therapist. The Medical Director of the PHCP then decides whether to grant or deny the request based in part on whether the child's diagnosis and requested medical treatment are listed by the New York State Department of Health ("DOH") as eligible services. Where the requested medical services are not listed or there is ambiguity concerning

the appropriateness of the requested relief, the County Medical Director can seek the assistance of the DOH in determining whether to grant the request.[1] The County Medical Director may decide to deny PHCP funding if he or she believes, in his or her professional opinion, that the medical treatment sought will not assist the rehabilitative progress of the child. In the present case, all parties agree that plaintiffs met all of the threshold requirements for PHCP funding at the inception of the lawsuit.[2]

### Laura Colson

Plaintiff Laura Colson alleges that she suffers from cerebral palsy and a severe degenerative disease of the brain, which has resulted in profound mental retardation.[3] Colson's condition has rendered her completely disabled and totally dependent upon her mother as she has no "use of her legs, arms or hands. She cannot talk. She can barely hold her head up." Item No. 33, ¶ 5. She often has grand mal seizures in which she becomes uncontrollable. Colson's medical condition requires frequent visits to doctors and to the Center for the Handicapped in Cheektowaga, New York for physical, occupational and language therapy. "On many occasions she has experienced grand mal seizures while being transported in her mother's automobile. Such uncontrollable and unrestrained violent thrashing about while laying down in the back seat of her mother's automobile is extremely dangerous." Item No. 35, p. 4.

In May 1985, Dowd Service and Sales submitted an application on Colson's behalf requesting that the PHCP provide Laura with a Britax Car Seat with Stroller Base because her condition precluded her from safely traveling in automobiles equipped with conventional car seats. "Accompanying this request was information about the car seat and stroller base, including price, and a letter signed by a physician and physical therapist, explaining Laura's need for these items." Item No. 5, ¶ 24. The Britax car seat, when attached to the stroller base, also acts as a stroller that would make transporting Laura more practicable since she is too heavy to be carried by her mother.

The PHCP denied Colson's request for the car seat in August 1985. Colson's mother contacted Eugene Sillman, Medical Director of Erie County and requested a written confirmation of the denial of the request. Sillman refused to provide written confirmation. Mrs. Colson then contacted State Senator William Stachowski. Senator Stachowski wrote to Sillman on Colson's behalf, and Sillman responded with a letter in which he acknowledged that the PHCP had denied Colson's request. The letter stated that Colson may appeal the matter by requesting "a Fair Hearing through the usual New York State process." Item No. 35, p. 5.

In October 1985, Colson's lawyer, James Sheldon, wrote to Sillman seeking a clarification of the status of the request for a car

---

1. The statute and regulations governing the PHCP are vague. However, the parties' briefs and statements pursuant to Local Rule 13 (now Local Rule 25) demonstrate that the DOH and PHCP have adopted various practices and guidelines which assist in the day to day operation of the program.

2. Since the inception of the lawsuit, some or all of the plaintiffs have either received benefits or are otherwise no longer eligible to participate in the PHCP. This suit was originally brought as a class action, but the Honorable John T. Elfvin denied class certification when defendants represented that any prospective benefit of declaratory and injunctive relief would extend to all potential class members, thereby making class certification unnecessary. Memorandum and Order, September 11, 1986, Item No. 25. Judge Elfvin then transferred the case to this Court. At oral argument on February 12, 1991, the parties

agreed that at least some of the claims asserted by plaintiffs are not moot. Based on the agreement among the parties, and Judge Elfvin's findings, the Court ruled from the bench that the present action is not moot citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974) (where employers brought action against state relating to an economic strike, and the strike ended, declaratory relief was proper where the challenged governmental action was a fixed and definite policy), and *Jones v. Califano*, 576 F.2d 12, 20 (2d Cir.1978) ("judicial review cannot be entirely foreclosed by the fortuity of a termination of the individual grievance").

3. The factual statements contained in this section are derived from the amended complaint, affidavits, Rule 13 statements, and the briefs submitted by the parties. The material facts relative to plaintiff's motion are not disputed by the parties.

seat. He requested a written confirmation of the denial of the request, an explanation of the reasons for the denial and a statement setting forth the availability of any appeal procedure. Sillman advised Sheldon that any concerns should be addressed to Alan Gerstman, Assistant Erie County Attorney. Sheldon wrote to Gerstman on November 7, 1985 requesting a hearing or other review. Gerstman responded by stating that there was no available administrative appeal and that the sole avenue of appeal would be through an Article 78 proceeding to the New York State Supreme Court pursuant to New York's Civil Practice Law and Rules. During a telephone conversation in November 1985, Gerstman told Sheldon that no final decision had been made on Colson's request for the car seat. Finally, in a letter of November 12, 1985, Sillman stated that the request was denied because the car seat was not medical equipment[4] and was therefore ineligible for funding by PHCP.[5] *Id.* at 5–7.

### Valerie White

Plaintiff Valerie White is wheelchair bound because of spastic cerebral palsy. PHCP paid for an electrically powered stairglide in the front of her home thereby allowing her access to and from her home.[6] White asserts that she subsequently requested that a protective cover be provided for the stairglide so that it could be used in inclement weather, and for funds so that certain repairs could be made to the stairglide. Without use of the stairglide, White was unable to attend school or receive medical care outside her home. Her frequent absence from school due to the disrepair of the stairglide disrupted her academic program as well as her physical and occupational therapy. Additionally, White was unable to participate in "Wheels and Sticks" a social and recreational organization for physically disabled children. White became very depressed at being cooped up at home away from her school, therapy and friends. On occasion, White "talked of suicide." Item No. 35, p. 8–9.

White's attorney wrote the PHCP on July 12, 1985 and requested that it make repairs to the stairglide and provide a protective cover. The repairs, plaintiff alleges, were made necessary by the failure of the PHCP to provide the protective cover when the stairglide was initially installed given the harsh winters that often frequent Western New York. Sillman did not respond to the letter. A second letter was sent to Sillman on October 4, 1985. Sillman responded on October 8, 1985 by stating that "on August 1, 1985, this office authorized payment for repairs to the items in need thereof." *Id.* at 9. Sillman suggested that the delay in the repairs was due to "Victor Medical." No mention was made of the protective cover.

White's mother contacted "Victor Medical" on October 18, 1985 and was informed that parts needed for the repair were on order. When she contacted them again on November 20, 1985, she was told that the PHCP had refused to authorize payment for the protective cover for the stairglide. At no time did White receive any written notice concerning her requests. "Furthermore, at no time have any of the defendants provided Mrs. White with any notice of any right to challenge or contest PHCP determinations."[7] *Id.* at 10.

### Darryl Battaglia

Plaintiff Darryl Battaglia is a C–6 quadriplegic and is confined to a wheelchair due to

---

4. In the statements pursuant to Local Rule 13, however, the PHCP did not object to the statement that car seats can be considered items of medical equipment. Therefore, it is deemed to be admitted, pursuant to the Local Rules. *See* Item No. 46, ¶ 85.

5. Colson has since received the car seat as the New York State Office of Mental Retardation and Developmental Disabilities agreed to provide for its funding. Colson's monetary claims remain, and since she is under the age of 21, she remains eligible for PHCP benefits.

6. Plaintiff contends that the PHCP agreed to pay for the stairglide only after White commenced litigation in State court. *See* Item No. 35, p. 7–8.

7. White subsequently moved into a group home thereby negating the need for the cover. While she is no longer eligible for coverage under PHCP as she is above the age of 21, White's monetary claims remain.

a diving accident in August, 1983. "He is largely paralyzed from the neck down, with only minimal use of his upper extremities." Item No. 32, ¶ 2. He asserts that his medical condition requires that he receive special skin care. Specifically, his skin must be kept scrupulously clean by means of a daily shower. Sponge baths are inadequate. Battaglia's skin breaks out easily and he does not possess the healing powers of normal skin. As a result, bed sores must be avoided, for if they occur, they may spread to his muscle and bone. The only way to prevent such sores is for Battaglia to keep his skin clean. Item No. 35, p. 11.

The shower in Battaglia's home is on the second floor, and due to his size and weight, 6'1" and 165 pounds, there is no way to transport him to the second floor. At one point, Battaglia's sister "tried to transport him to the second floor, but half way up [she] lost control of him, causing him to fall down the stairs." *Id.*

Battaglia requested that the PHCP pay for a Braun roll-in shower that was prescribed for him by his physician. The PHCP approved the cost of the shower, but Battaglia objected to the choice of contractors because the chosen contractor had previously performed work at his home which he was unsatisfied with. Additionally, Battaglia contends that the contractor lacked the necessary permits to do the requested work. Battaglia's counsel wrote the PHCP on May 8, 1985 requesting installation of the shower in accordance with all legal requirements. Counsel received a reply on May 30, 1985 stating that the May 8 letter was forwarded to the Erie County Attorney's office. Counsel wrote again on July 2, 1985 asking that the matter be expedited. He wrote a third time on October 7, 1985. There was no response to these last two letters, and the shower was never installed.[8] *Id.* at 12–14.

## DISCUSSION

Plaintiffs assert that they each have a property right in the requested medical services and that the failure of the PHCP to provide them with the services without a hearing or other means of appeal deprives them of their due process rights under the Fifth and Fourteenth Amendments. Defendants contend that plaintiffs do not have an entitlement in the applied for medical services and consequently, there is no due process violation.

*Standard on Summary Judgment*

The Second Circuit, in *Bryant v. Maffucci,* 923 F.2d 979 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991), articulated the standard for summary judgment under Fed.R.Civ.P. 56:

> In assessing the record, all ambiguities and reasonable inferences are viewed in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655[, 82 S.Ct. 993, 993, 8 L.Ed.2d 176] (1962) (per curiam). Summary judgment is appropriately granted when there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23[, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265] (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248[, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986). Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper. *See id.* at 250–51[, 106 S.Ct. at 2511]. Once the movant has established a *prima facie* case demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a "metaphysical doubt" concerning the facts, *see Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586[, 106

---

8. Battaglia is no longer eligible for PHCP benefits as he is over the age of 21. However, his monetary claims remain.

S.Ct. 1348, 1355, 89 L.Ed.2d 538] (1986), or on the basis of conjecture or surmise. 923 F.2d at 982.

### The New York State Statute

New York Public Health Law § 2580 (McKinney, Supp.1992) provides that "[i]t is the policy of the state of New York to provide medical service for the treatment and rehabilitation of children with physical disabilities." Section 2582 states that the "department shall on its own initiative provide within the limits of the appropriations made therefor, such medical services for children with physical disabilities as in the judgment of the commissioner is needed." Section 2581(2) defines medical services as "diagnostic, therapeutic and rehabilitative care by medical and paramedical personnel, including hospital and related care, and drugs, prostheses, appliances, equipment and devices, as necessary."

In accordance with the state law, each county can decide whether it will offer a PHCP program. Currently, every county in New York State offers the program. Each county PHCP may issue guidelines on income and covered conditions, and may decide to opt out of providing certain services. Each PHCP is run by the County Medical Director who is ultimately responsible for deciding whether to grant a request for medical services.

In order to qualify for PHCP benefits, the applicant must be under the age of 21, and have a condition caused by accident, injury or disease. N.Y.Pub.Health Law § 2581. The applicant also must meet certain family income requirements, and the child's diagnosis must be on a list of conditions approved by the DOH. *Id.* Additionally, the diagnosis must not be one that the particular county PHCP has opted not to cover.

Reading § 2581 and § 2583 together, a child under the age of 21, who is financially eligible and has a medical condition covered by the program, will be entitled to PHCP benefits, including medical services and equipment, if he or she has a medical need for them and will benefit from them.

### Due Process Property Interest

In determining whether a person has a property interest in government benefits that triggers due process protection, courts have considered: (1) whether the person has a legitimate claim of entitlement to the benefit; [9] (2) the person's status as an applicant or recipient; [10] (3) whether the program administrator's discretion in providing benefits is limited by law, rules or understandings; [11] and (4) whether the claimant is able to make a prima facie showing of eligibility.[12] Where claimants can show that they have a legitimate expectation in the benefits, the administrator's discretion is limited, and have made a prima facie showing of eligibility, they will have a property right whether they are recipients of benefits or applicants for benefits. Having resolved all ambiguities and reasonable inferences in a light most favorable to defendants, the non-moving party, *Bryant*, 923 F.2d at 979, the Court finds that plaintiffs have established that they have a property interest in the applied for medical equipment.

### I.  Legitimate Claim of Entitlement

In order for a person to have a property interest under the Constitution in the relief sought, he or she must "have more than an abstract need or desire for it. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Property interests do not themselves derive from the Constitution, but instead, are based on and governed by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In the landmark case of

**9.** *See infra* at 13.

**10.** *See infra* at 16.

**11.** *See infra* at 19.

**12.** *See infra* at 23.

*Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court found that welfare recipients have a property right in the continued payment of welfare benefits, and that their termination without a pretermination hearing deprived them of their property interest in the benefits without due process of law.

Since *Goldberg,* the Supreme Court and other courts have found property or liberty interests in such contexts as probation revocation proceedings, *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); parole revocation, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); revocation of drivers licenses, *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); medicare benefits, *Kraemer v. Heckler,* 737 F.2d 214 (2d Cir.1984); and leases for public housing, *Escalera v. New York City Hous. Auth.,* 425 F.2d 853, 862–63 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970). In each case, the court found an interest in the governmental benefit that went beyond a "unilateral expectation." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

While a person's claim for entitlement may be based on formalized rules and regulations, the Supreme Court held in *Roth,* 408 U.S. at 564, 92 S.Ct. at 2702, and *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), that the entitlement or property interest can exist independent of formalized rules:

> We have made clear in *Roth* that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry,* 408 U.S. at 601, 92 S.Ct. at 2699 (citations omitted).

Thus, the existence of a property interest must be based on a legitimate claim of entitlement to some benefit established under state and local law, rules or understandings. As the foregoing analysis is applied to the PHCP, plaintiffs have demonstrated that they have more than a mere expectation in the medical equipment. Instead, they have a legitimate claim of entitlement to the equipment based on the New York Public Health Law, and the rules and guidelines that assist in the operation of the PHCP.

The Supreme Court, in *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* found a Nebraska statute to confer a protected expectation in parole release where the statute stated: "[w]henever the Board of Parole considers the release of a committed offender who is eligible for parole, it *shall* order his release" unless the Board finds that one of the statutory exceptions exists. 442 U.S. 1, 11, 99 S.Ct. 2100, 2105, 60 L.Ed.2d 668 (1979) (emphasis added). In *Griffeth v. Detrich,* the court held that the California welfare statutes gave rise to a property interest based on statutory language that stated each county "shall" give aid and support to persons meeting certain requirements. 603 F.2d 118 (9th Cir.1979), *cert. denied,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980). In both cases, the statutory language made the conferment of benefits mandatory.

The mandatory language of New York Public Health Law § 2582 gives rise to a legitimate expectation in the requested medical relief. By stating that "the department *shall* ... provide ... medical services for physically handicapped children" (emphasis added) where the services are necessary and helpful in the rehabilitative process, the statute confers on applicants who meet the threshold criteria for entry into the PHCP, more than "a unilateral expectation"—it confers a property interest.

Thus, New York Public Health Law, like the California and Nebraska statutes, is mandatory in its dictates, and serves as the basis for the legitimate expectation in each plaintiff as a matter of law.

## II. *Recipient Versus Applicant Status*

■ In determining whether a particular person has a property interest in the re-

quested benefits, the focus is *not* on whether the person is seeking to obtain, rather than retain a benefit, *i.e.*, whether the person is an applicant or recipient. Instead, the proper focus is on whether the person has demonstrated a legitimate reliance on the state and local rules and understandings. *Daniels v. Woodbury County,* 742 F.2d 1128, 1132 (8th Cir.1984).

Federal courts have considered the applicant versus recipient status in a variety of contexts, and have held that for purposes of whether there is a property entitlement, there is no distinction between the two.[13] *See Ressler v. Pierce,* 692 F.2d 1212 (9th Cir.1982) (rental subsidy); *Griffeth v. Detrich,* 603 F.2d at 118 (general welfare assistance); *White v. Roughton,* 530 F.2d 750, 755 (7th Cir.1976) (general welfare assistance); *Raper v. Lucey,* 488 F.2d 748, 752 (1st Cir. 1973) (liberty interest in drivers license); *Johnston v. Shaw,* 556 F.Supp. 406, 412–13 (N.D.Tex.1982) (welfare benefits); *Grueschow v. Harris,* 492 F.Supp. 419, 424 (D.S.D.), *aff'd,* 633 F.2d 1264 (8th Cir.1980) (energy assistance grant); *Meyer v. Niles Township,* 477 F.Supp. 357 (N.D.Ill.1979) (aid to medical indigents); and *Baker–Chaput v. Cammett,* 406 F.Supp. 1134, 1138 (D.N.H.1976) (welfare benefits).

In *Daniels,* the Eighth Circuit "reject[ed] the distinction ... between eligibility and termination of a benefit. 'Applicants who have met the objective criteria of a wide variety of governmental programs have been held to be entitled to protection under the due process clause.'" 742 F.2d at 1132 (*quoting Holbrook v. Pitt,* 643 F.2d 1261, 1278 n. 35 (7th Cir.1981)).[14] The court found that there was a property interest in the

welfare benefits, based on the underlying state and local welfare rules.

The United States Supreme Court has never decided the issue of whether applicants for government assistance have a property (or liberty) interest implicating due process protection. *See Lyng v. Payne,* 476 U.S. 926, 943, 106 S.Ct. 2333, 2343, 90 L.Ed.2d 921, *reh'g denied,* 478 U.S. 1031, 107 S.Ct. 11, 92 L.Ed.2d 766 (1986); *Walters v. National Ass'n of Radiation Survivors,* 473 U.S. 305, 320 n. 8, 105 S.Ct. 3180, 3188 n. 8, 87 L.Ed.2d 220 (1985). However, dissenting from a denial of certiorari in *Gregory v. Pittsfield,* Justice O'Connor said "[o]ne would think that where state law creates an entitlement to general assistance based on certain substantive conditions, there similarly results a property interest that warrants at least some procedural safeguards." 470 U.S. 1018, 1021, 105 S.Ct. 1380, 1381, 84 L.Ed.2d 399 (1985). Justice O'Connor further stated that "[al]though this Court has never addressed the issue whether applicants for general assistance have a protected due process interest, the weight of authority among the lower courts is contrary to the conclusion of the Supreme Judicial Court [which found no property interest]." *Id.* (citations omitted). *See also Peer v. Griffeth,* 445 U.S. 970, 100 S.Ct. 1348, 64 L.Ed.2d 247 (1980) (Justice Rehnquist dissenting from a denial of *certiorari* in which the Ninth Circuit held that an applicant for welfare benefits is entitled to due process guarantees).

Consequently, for purposes of assessing whether there is a property interest in PHCP benefits implicating due process protection, the fact that plaintiffs are applicants for benefits rather than current recipients is not determinative. As long as plaintiffs dem-

---

13. The defendants cite *Sumpter v. White Plains Hous. Auth.,* 29 N.Y.2d 420, 328 N.Y.S.2d 649, 278 N.E.2d 892, *cert. denied,* 406 U.S. 928, 92 S.Ct. 1803, 32 L.Ed.2d 130 (1972); *Meschino v. Lowery,* 31 N.Y.2d 772, 338 N.Y.S.2d 625, 290 N.E.2d 825 (1972); and *Gregory v. Pittsfield,* 479 A.2d 1304 (Me.1984), *cert. denied,* 470 U.S. 1018, 105 S.Ct. 1380, 84 L.Ed.2d 399 (1985), for the proposition that there is a distinction between a person's status as a recipient and an applicant for due process purposes. These state cases are not controlling authority.

14. While the Eighth Circuit later held that applicants for Section 8 housing subsidies do not have a property interest in the grants in *Hill v. Group Three Hous. Dev. Corp.,* 799 F.2d 385 (8th Cir. 1986), this was based on the broad discretion afforded the decision-maker and not the person's status as an applicant or recipient. *See also Eidson v. Pierce,* 745 F.2d 453 (7th Cir.1984) (Court found that applicants for Section 8 housing subsidies did not have property interest due to broad discretion in decision-makers rather than due to the person's status as an applicant.).

onstrate that they have a legitimate expectation in the requested relief by making a prima facie showing of eligibility, and that the program administrator's discretion is limited, they will have the required property interest as a matter of law.

### III. Discretion of the Decision Maker

As previously noted, courts have considered the amount of discretion a decision-maker possesses in determining whether a property interest exists. *Jacobs, Visconsi & Jacobs v. City of Lawrence,* 927 F.2d 1111, 1116 (10th Cir.1991). Where the government agent possesses "unbridled discretion" in determining whether to grant benefits, there can be no property interest. In *Santa Clara v. Andrus,* 572 F.2d 660, 676 (9th Cir.), *cert. denied,* 439 U.S. 859, 99 S.Ct. 176, 58 L.Ed.2d 167 (1978), the government official was given "unbridled discretion" in determining how to distribute low cost hydroelectric power. Since the government official was afforded this *complete* discretion, unconstrained by rules, statutes or understandings that could serve to limit his or her choices, the court held that no property interest existed.

However, where the scope of the government official's discretion is limited by statute or regulation, an entitlement may exist. In *Ressler v. Pierce,* 692 F.2d 1212 (9th Cir. 1982), the court found an entitlement in Section 8 housing subsidies because the official administering the program had his discretion limited by the relevant statute and regulations.

Even where the discretion afforded the program administrator is considerable, but nonetheless limited by statute, a protected interest is created. In *Greenholtz,* the Supreme Court found a protected interest in parole release where the Nebraska parole statute "vest[ed] very broad discretion in the [Parole] Board." 442 U.S. at 13, 99 S.Ct. at 2106. The Court found that the Parole Board's discretion was not complete since the relevant statute stated: "[w]henever the Board of Parole considers the release of a committed offender who is eligible for parole, it *shall* order his release" unless the Board finds that one of the statutory exceptions

exists. *Id.* at 11, 99 S.Ct. at 2105. (emphasis supplied). The mandatory language created the protected interest despite the existence of "very broad discretion" in the decision maker.

Therefore, it is necessary to distinguish between the unbridled discretion cited by the court in *Andrus* and the more general kind of discretion that always exists in governmental decision making, *see e.g., Greenholtz,* 442 U.S. 1, 99 S.Ct. 2100. This distinction was recognized by the Second Circuit in *Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991) in stating:

> If the statute, regulation, or contract in issue vests in the state significant discretion over the continued conferral of that benefit, it will be the rare case that the recipient will be able to establish an entitlement to that benefit.
>
> On the other hand, when state law supports a party's legitimate claim of entitlement to a governmental benefit, that benefit cannot be stripped without procedural due process.

*Id.* 930 F.2d at 175 (citations omitted). Thus, only where an administrator's discretion is so significant that there can be no legitimate claim of entitlement based on state law will due process protection be unnecessary.

While the PHCP Medical Director does have some discretion in how to allocate resources, his or her discretion is limited by law, regulations and understandings that serve to restrain the choices. New York Public Health Law § 2582 provides that the "department *shall* on its own initiative provide within the limits of the appropriations made therefor, such medical services for children with physical disabilities as in the judgment of the commissioner is needed." (emphasis supplied).

While the department must judge exactly what constitutes a "medical service," this determination is not wholly discretionary since § 2581(2) defines medical services as "diagnostic, therapeutic and rehabilitative care by medical and paramedical personnel, including hospital and related care, and drugs,

prostheses, appliances, equipment and devices, as necessary."

The department must further determine which services are "necessary" and "needed." This decision also is not wholly discretionary. The DOH and PHCP have adopted guidelines that assist the decision maker in determining which services are necessary. *See* Item No. 46. The discretion afforded PHCP administrators is less than what the supervisors had in *Andrus* and is similar to the amount in *Greenholtz.* Since the amount of discretion left to PHCP administrators is not "unbridled," but is instead limited by law, regulations and practice, applicants for PHCP funding have a protected property interest once they make a prima facie showing of eligibility.

■ Defendants cite the fact that the county can decide not to offer PHCP at all for the proposition that no property right is conferred. In effect, defendants contend, the county's decision whether to participate in the program itself is discretionary. The Court has considered this argument and finds it without merit. The fact that a municipality *can* decide not to offer a program at all does not relieve it from providing constitutionally mandated due process when it *does* offer the program. *See Gattis v. Gravett,* 806 F.2d 778 (8th Cir.1986).

## IV. *Prima Facie Showing of Eligibility and the Existence of a Property Interest*

■ It is not necessary for a claimant to prove that he or she is absolutely entitled to receive a government benefit in order for property rights to attach and due process measures to be required. In *Roth,* the Supreme Court stated:

Thus, the welfare recipients in *Goldberg v. Kelly* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so.

408 U.S. at 577, 92 S.Ct. at 2709. The Court reaffirmed this point in *Perry:*

Proof of such a property interest [*i.e.,* the potential right to a continued teaching position under the tenure rules] would not, of course, entitle [plaintiff] to reinstatement. But such proof would obligate the college officials to grant a hearing at his request, where he could be informed of the grounds for his nonretention and challenge their sufficiency.

408 U.S. at 603, 92 S.Ct. at 2700. Hence, it is the *potential right* to receive a government benefit by making out the prima facie case for entry into the program according to existing rules, regulations, and understandings, that gives rise to the claim of entitlement.

Like the plaintiffs in *Goldberg, Roth* and *Perry,* plaintiffs in the instant case have made a prima facie showing that they may be eligible for the benefits applied for—they have demonstrated that they meet the threshold criteria for participation in PHCP and that they have a legitimate claim of entitlement to the items of equipment sought.

In Valerie White's case, for example, the Erie County PHCP paid for a stairglide to allow her access to and from her home despite her use of a wheelchair. It is obvious, therefore, that the PHCP administrators considered the stairglide to be a covered "medical service" under New York Public Health Law § 2581(2) since they approved its purchase for White.

White subsequently requested that PHCP purchase a protective cover to make the stairglide operable during the winter season when ice and snow collecting on the stairglide make its operation impracticable. Based on the state and county policy of treating stairglides as medical equipment under the PHCP, White had a legitimate expectation that with a properly documented need, the repairs and protective cover would be approved so that she could make effective use of the stairglide. Thus, the statute providing for funding of equipment, and the state and local policies providing for payment for stairglides, serve as the "rules of mutually explicit understandings that support [White's] claim of entitlement to the benefit

[*i.e.,* the stairglide cover]...." *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. Since White could not benefit from her stairglide without the protective cover, she had a legitimate expectation that this request would be approved.

Plaintiffs Battaglia and Colson have similar legitimate claims of entitlement for which they are entitled to receive measures of due process following a denial of benefits.

Battaglia had a property interest in the roll-in shower he requested. After Battaglia and his mother objected to the choice of contractor, the approval for the shower was apparently revoked as the shower was never installed. Battaglia had a legitimate expectancy that once the PHCP approved the funding of the roll-in shower, the shower would be installed in his home.

In Colson's case, she had a legitimate expectation in the car seat she requested based on the fact that she had a documented medical need for the car seat. Since the PHCP considers car seats to be items of medical equipment, and potentially eligible for funding, Colson had a legitimate expectation that her request would be granted.[15] She has made a prima facie showing of eligibility, and consequently, she has a property interest in receiving the car seat, and must be afforded measures of due process after a request is denied.

Accordingly, if the applicant is able to make a prima facie case that he or she meets the conditions for eligibility in the program as dictated by statute, rule or understanding, and the government administrator does not possess "unbridled discretion" in the operation of the program, the applicant possesses a property interest and is entitled to due process in the event that his or her application is denied. Each of the plaintiffs has demonstrated that he or she has such a property interest and that consequently, he or she is entitled to the appropriate measures of due process under the Constitution.

The Court does not decide, at this time, what measures of Due Process are required under the Constitution. Instead, the Court orders the parties to submit a joint proposal[16] to the Court on the procedures that the PHCP must henceforth follow. The proposal is to be filed no later than May 1, 1993. Finally, the parties are directed to appear before this Court on January 15, 1992 at 9:00 a.m. for a status conference.

## CONCLUSION

IT IS HEREBY ORDERED that plaintiffs' motion for partial summary judgment on the issue of whether there is a protected property interest is granted; and

IT IS FURTHER ORDERED that the parties prepare and file, by May 1, 1993, a proposal on the due process procedures that the PHCP will henceforth follow; and

IT IS FURTHER ORDERED that the parties are directed to appear before this Court on January 15, 1993 at 9:00 a.m. for a status conference.

IT IS SO ORDERED.

---

**15.** *See* footnote 4, *supra.*

**16.** The Court encourages the parties to negotiate and produce a joint recommendation on what measures of due process should be afforded.